Henry Holmes, Appellee, v. Louis Rolando, Trading as Uptown Tavern, Appellant.

Opinion filed November 19, 1943.

ELMER J. MEDLIN, of Carbondale, and EKERN, MEYERS & MATTHIAS, of Chicago, for appellant; ELMER J. MEDLIN, of Carbondale, and DONALD L. THOMPSON and WILLIAM G. CHORN, both of Chicago, of counsel.

D. L. Duty and Chas. D. Winters, both of Marion, for appellee.

Mr. Justice Bristow delivered the opinion of the court.

The trial court nomenclature will be followed in this opinion, namely the appellant and appellee will be called defendant and plaintiff respectively. Henry Holmes, the plaintiff was a laboring man, employed at an ordnance plant, was about 41 years of age, and weighing 150 pounds. The defendant Louis Rolando was a tavern operator, operating the Uptown Tavern on Union street in Marion, Williamson county, Illinois. Rolando had working for him a bartender by the name of John Shanks who had full authority to operate the tavern when he was on duty. John was a healthy robust individual about the age of 42 and weighing in the neighborhood of 300 pounds. Before the trial he passed away.

On April 27, 1942, the plaintiff arrived at the defendant's tavern at about 6 o'clock in the morning in company with Bob Motsinger and John Swafford. They entered upon a program of pretty steady drinking of bourbon, interspersed with a few rounds of draft beer. During the morning hours the three consumed about five half pints of liquor and by noon were unquestionably intoxicated. Swafford was out of the jurisdiction of the court and did not testify, and the plaintiff's and Motsinger's account of what transpired is somewhat obscure and incomplete due to memories impaired by intoxication, but from a careful reading of the record, the following seems to be just about what happened there in the tavern that produced the present litigation. The plaintiff became so intoxicated that Shanks said he could not buy any more liquor. About 2 p. m. of that day there was present in the tavern a young lady by the name of Muriel Eason. Holmes ordered for this person a beer and sat with

her in a booth and proceeded to drink the beer for her. Apparently Shanks was displeased with Holmes; thus circumventing his orders, he undertook to forcibly evict the plaintiff. A general brawl ensued, whereupon the sober giant dealt pretty brutally with the drunken plaintiff, causing him to have a broken jaw, several broken ribs and many lacerations and bruises.

The plaintiff feeling himself wronged by the foregoing mistreatment by the defendant's bartender, filed his complaint consisting of two counts, the first of which is predicated solely on the "Dram Shop Act" which is found in Ill. Rev. Stat. 1941, ch. 43, sec. 94, *et seq.* [Jones Ill. Stats. Ann. 68.001, *et seq.*]. Count two is founded upon the alleged wanton, wilful and malicious assault by John Shanks, then agent and servant of defendant Rolando. On the trial of the cause separate forms of verdict as to each count were given to the jury, and submitted to them were also three special interrogatories. The jury returned a separate general verdict as to each count and finding the defendant guilty and assessing damages in the sum of $1,500 on the first count and $2,500 on the second count. As to special interrogatory number 1, which was as follows: "Do you believe from. the evidence that the plaintiff, Henry Holmes, received his injuries as a result of his own misconduct in provoking an assault by John Shanks?", the jury answered "NO." As to special interrogatory number 2, "Do you believe from the evidence that John Shanks was acting in necessary self-defense, when he struck the plaintiff, Henry Holmes?", the jury answered "NO." As to special interrogatory number 3, "Do you believe from the evidence that the plaintiff, Henry Holmes, received his injuries as a direct result of his own voluntary intoxication?", the jury's answer was "YES."

The defendant at the close of all the evidence made motions for directed verdict as to both counts of the complaint. Rulings on these were reserved by the

trial court. After the jury's verdicts were returned, the defendant then made motions for judgment notwithstanding the verdicts, on both counts, and in the alternative for new trial as to both. The court thereupon granted defendant's motion for judgment notwithstanding the verdict as to count 2, but overruled the same as to count 1 and thereafter entered judgment for the plaintiff and against the defendant in the sum of $1,500 on count 1. From this order the defendant appeals, by filing his notice of appeal with proof of service on December 23, 1942. The appellant, in preparing his abstract and in his discussion in his brief, devoted himself exclusively to the propriety of the trial court's ruling in entering judgment for the plaintiff on the first count. He takes the position that he having prevailed in his contentions on the second count, was not interested in an appeal therefrom. And the defendant further contends that since the appellee filed no notice of appeal or cross-appeal at any time after December 23, 1942, he cannot now be heard to question the propriety of the trial court in entering judgment notwithstanding the verdict for the defendant on the second count. Even though it may appear that the plaintiff is suffering an injustice in this instance, this court is compelled to hold under Rule 35 of the Supreme Court of Illinois, and the adjudicated decisions of the reviewing courts of Illinois thereunder, that it is mandatory that notice of cross-appeal be filed, and the appellee failing to do so is barred from asserting cross-errors. Rule 35 reads as follows: "(1) Each appellee who desires to prosecute a cross-appeal from all or any part of the judgment, decision, order or decree . . . shall, within ten days after service of notice of appeal, serve a notice upon each party or attorney or firm of attorneys, who signed the notice of appeal . . . and file a copy thereof in the trial court. (2) The notice shall be drawn as follows: a. It shall be entitled in the same manner as a notice

of appeal, and shall be designated Notice of Cross-Appeal." Our Supreme and Appellate tribunals have had occasion to consider and interpret this rule and sustain the view urged by the defendant, in the following decisions, namely, *Scribner v. Village of Downers Grove*, 372 Ill. 614 at page 616; *First-Trust Joint Stock Land Bank v. Cutler*, 286. Ill. App. 6; *First Nat. Bank of Mackinaw v. School Dist. No. 64*, 278 Ill. App. 190; *Parish Bank & Trust Co. v. Uptown Sales & Service Co., Inc.*, 300 Ill. App. 73.

The sole remaining question to which we will now address our consideration, is whether or not the plaintiff, having become voluntarily intoxicated, and receiving his injuries as a direct result thereof, can sustain a cause of action under the Dram Shop Act. It is the contention of the defendant that the intoxicated plaintiff is not one of those persons for whose benefit that act was enacted. The jury found in their answer "YES" to the third interrogatory that the plaintiff's injuries were the direct result of his own voluntary intoxication. In 1880 Judge COOLEY of the Supreme Court of Michigan, in the case of *Brooks v. Cook*, 44 Mich. 617, 7 N. W. 216, in considering a Dram Shop Statute, almost identical with the one now in force in Illinois, had occasion to decide this very question. His reasoning therein seems so irresistible, that with profit we feel justified in quoting rather fully from his opinion:

"The question in this case is, whether one who becomes intoxicated in a saloon, upon liquor there sold to him by the keeper, and who while in that condition has his pockets picked, may maintain an action against the keeper to recover the money taken from him?

"The question arises under Act No. 193 of 1877 commonly called the police act, the third section of which provides among other things that 'every wife, child, parent, guardian, husband or other person, who shall be injured in person and property or means of

support, by any intoxicated person, or by reason of the intoxication of any person, or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented or malt liquors to any person, shall have a right of action in his or her own name against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury.'

"The question is one of the construction of the statute. Is the person to whom the liquor is sold, etc., and who in consequence sustains an injury, one of the persons for whose benefit the statute is passed? The circuit court was of opinion that he is.

"So far as the statute attempts any enumeration of persons who may sue, they all stand in some one of the domestic relations to the person to whom the liquor is sold, given or furnished. To that extent the statute unquestionably contemplates that there shall be three persons concerned: the person selling, giving or furnishing, the person receiving and causing an injury, and the person injured. But there might be other cases equally meritorious with these (see *English v. Beard,* 51 Ind. 489; *Bodge v. Hughes,* 53 N. H. 614); and therefore after enumerating wife, child, parent, guardian and husband, the statute extends the right of action to other persons injured. Does it intend among the other persons who may sue to include the person himself whose intoxication causes or is the occasion or reason of the injury? Doubtless the statute might have extended its benefits to the intoxicated person, but if such were the intent it is surprising that it was not distinctly and unequivocally expressed. It was as easy to designate the party himself as it was his wife, child, guardian, etc. Moreover the man himself may generally be supposed to be injured in some degree by intoxication, so that his case would furnish the most frequent occasion for a suit if he should see

fit to resort to legal proceedings. It would be very remarkable that a statute in enumerating the persons who would share in its benefits should omit to name the very one who could most often be entitled to its aid. But it is a sensible and well understood rule of construction that when after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named. *Hawkins v. Great Western Ry. Co.,* 17 Mich. 57; *McDade v. People,* 29 Mich. 50, and cases cited. Apply this rule here, and the party intoxicated is excluded. The persons enumerated are persons who stand to him in special relations, and it is therefore to be assumed that 'any other person' who may sue must also stand to him in some special relation so as to be injured by his intoxication or by the sale, etc., to him. A creditor might perhaps stand in that relation under some circumstances, or a contractor, or servant, or the master of a vessel, or a traveler passing him in the street, and so on. But he could not stand in any such relation to himself, and therefore cannot be understood as embraced in the terms, 'wife, child, parent, guardian, husband *or other person,*' injured in person, property or means of support by himself, or by reason of his intoxication or by the sale, etc., of intoxicating drinks to himself. The statute evidently contemplates three parties—seller, receiver and injured party—in all cases.'' Judgment is reversed.

The *Brooks* opinion is cited with approval in the case of *James v. Wicker,* 309 Ill. App. 397. In this case the court made the pertinent observation that the Michigan Statute for all intents and purposes of deciding this question was the same as the Illinois Statute. In the recent case of *Forsberg v. Around Town Club, Inc.,* 316 Ill. App. 661, the court at page 666 said ''We believe that by his conduct the plaintiff brought the injuries upon himself and is not such an innocent

suitor as the Dram Shop Act contemplated, and as a matter of law should not recover. The trial court erred in denying defendants' motion for a directed verdict at the close of the plaintiff's case." It seems wholly unnecessary for this court to quote further from the many other cases contained in the defendant's brief, to sustain the view that the plaintiff as a matter of law is not entitled to recover in this case, but for those who might be interested in a further study of the question, let us cite the following cases:—*Buntin v. Hutton,* 206 Ill. App. 194; *Reget v. Bell,* 77 Ill. 593; *People v. Linck,* 71 Ill. App. 358; *Haw v. 1933 Grill, Inc.,* 297 Ill. App. 37; *Whiteside v. O'Connors,* 162 Ill. App. 108. Some of these decisions were under the 1874 Dram Shop Statute, but the 1934 enactment being substantially the same, the latter statute will receive the same judicial interpretation and construction. Supporting this statement is the case of *Village of Glencoe v. Hurford,* 317 Ill. 203, and the case of *Haw v. 1933 Grill, Inc.,* 297 Ill. App. 37. The case of *Pearson v. Renfro,* 320 Ill. App. 202, is the most recent pronouncement on the subject under consideration. It had the following to say on page 208: "As to the claims of Robert Pearson and John Behrens, Jr. for damages, the trial court held, and we think properly so, that where, as here, it is shown that the repeatedly purchased rounds of drinks, which contributed to the intoxication of George Verble, from which their injuries resulted, neither of them is entitled to recover. The reason is, that having by their own conduct brought the injuries upon themselves, they are not such innocent suitors as are contemplated by the statute." Since the enactment of the Dram Shop Act of 1874 there has been no reported case where a plaintiff has been awarded damages in consequence of his own voluntary intoxication, nor has there been one cited from other jurisdictions, where legislation comparable to ours is in force. Pause, if you will and contemplate

the vast number of claims that may be urged by drunks, if they were entitled to every expense and injury that are natural concomitants of intoxication. Surely the legislature did not intend them to be compensative under the statute.

The judgment entered by the trial court for the plaintiff and against the defendant in the sum of $1,500 should be reversed and the same is hereby ordered reversed and judgment is entered here for the defendant and against the plaintiff in bar of action and for costs.

*Judgment reversed and judgment for defendant entered here.*