**Mary McEvoy, Plaintiff-Appellee, v. Robert S. Brown, Defendant-Appellant.**

Gen. No. 10,149.

Third District.

May 21, 1958.

Released for publication June 7, 1958.

LeForgee, Samuels & Miller, of Decatur (Carl R. Miller, and Jerald E. Jackson, of counsel) for defendant-appellant.

Baird, Latendresse & Jones, and Charles P. Lippert, of Decatur (Floyd Latendresse, and Charles P. Lippert, of counsel) for plaintiff.

JUDGE REYNOLDS delivered the opinion of the court.

The plaintiff, Mary McEvoy, seventy-two years of age, sued her son-in-law Robert S. Brown, claiming she was attacked or injured by the dog of the defendant, by reason of its running into or against her in such a manner that she fell or was knocked from her back steps and broke her ankle. The dog belonged to the defendant son-in-law, and had been brought to the home of the plaintiff by her two grandsons, children of the defendant. At that time the plaintiff was living in her own home at 890 West William Street in Decatur, Illinois. The defendant, at the

time of the injury to the plaintiff, lived at 2 Millikin Place, in Decatur. The little boys brought the dog which was a puppy about 3 months old over to their grandmother's home and tied him in the back yard. There had been some prior arrangement between the plaintiff and her daughter that she would care for the boys that afternoon and the plaintiff first saw the dog some time after the boys got there, when she found him tied up in the back yard. She thought he was hungry and went back into the house to get some steak bones for him. She untied him before she fed him and because the dog appeared to be still hungry she started back into the house to get him more food. The plaintiff is not clear whether or not she was on the back porch or still on the steps when the puppy ran between her legs and she fell. She is positive in her testimony that he ran between her legs. She had a visitor with her at the time, a Mrs. Whitley, but Mrs. Whitley did not see the dog when he ran into or against the plaintiff. The only witness as to the actual running into or against the plaintiff by the dog is the plaintiff herself. The defendant was not in the city at the time of the accident, and knew nothing about it. There does not seem to be any dispute as to the extent of the injury suffered by the plaintiff and the amount of her expenses growing out of the injury. The questions before this court are the legal questions raised by the appeal, and the question raised in the appeal as to what actually caused the plaintiff to fall, this being a question of fact, and since the plaintiff is the only witness as to this, an interpretation of her various statements as to what happened must be made. The plaintiff in her testimony uses several expressions as to the cause. In one place in her testimony, she stated the dog "ran up from behind her and went between her legs and threw her into the bushes on the east side." At other points she testified that the dog

473

ran between her legs and tipped her into the bushes; that it was the pressure of the dog that made her fall; that she fell when he got between her legs and she lost her balance; that he went between her legs and threw her into the bushes; that he evidently bumped against her when he went between her legs; that she fell because the dog tripped her, and then at another point she answered: "What I mean is, I guess I lost my balance when the dog tripped me." And at another point she said: "I remember distinctly feeling a twist of his body as he went between my legs and that is what caused me to fall."

Summing up this testimony of the plaintiff and her various expressions of what actually caused her fall, it seems definite that the act of the dog running between the plaintiff's legs, was the cause of her falling. Whether she was tipped, tripped, thrown, bumped, or was caused to lose her balance by reason of the dog running between her legs, is immaterial. The plaintiff did not fall as the result of any act or omission on her part, but because the dog ran between her legs, thereby causing her to fall, and this being established without question, any play on words or inquiry into the semantics is unnecessary.

The suit was brought under the provisions of Chapter 8, Section 12d of Illinois Revised Statutes (1953). The statute in question is as follows:

"If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term 'owner' includes any person harboring or keeping a dog. The term 'dog' includes both male and female of the canine species."

The plaintiff contended and so claimed in her complaint, (par. 2 of complaint) that she was attacked or

injured by said dog by reason of its running upon or against her in such manner as to knock the plaintiff from her steps and thereby throwing her with great force and violence to and upon the ground. And the plaintiff further contends that the attack or injury suffered by the plaintiff was without provocation on her part.

The only witnesses were the plaintiff, the defendant, who admitted ownership of the dog, but knew nothing of the dog being at the home of the plaintiff or what happened there, the defendant's wife, the daughter of the plaintiff, who was not present and knew nothing as to the actual occurrence, Mrs. Mabel Whitley, who was present but did not see the actual occurrence since she was looking another way, and Dr. Sterling G. Parker, who treated the plaintiff.

The cause was tried before a jury, and the jury returned a verdict for the plaintiff assessing her damages at $8,000. The jury also answered a special interrogatory finding that the plaintiff was not harboring or keeping the dog in question at and immediately prior to the time of the injury of which she complained.

From that verdict and judgment entered thereon, the defendant appeals to this court. The appeal raises five points as grounds for his appeal. 1. That the suit must be based upon Section 12d of Chapter 8, Illinois Revised Statutes, and that in this case the statute does not apply. 2. That the plaintiff provoked the occurrence she complains of. 3. There was no attack. 4. The only purpose of the statute was to eliminate the requirement of proving knowledge on the part of the owner. 5. That the plaintiff was harboring or keeping the dog at the time of her injury.

In considering the five points raised by the defendant, points Nos. 1, 3 and 4, since they involve a construction and interpretation of the statute, will be considered together.

475

■ ■   The defendant contends that there has been no allegation of negligence on the part of the defendant, and no contention that the defendant caused the occurrence.  This is true.  The complaint alleges the ownership of the dog, which is not disputed, sets forth that she was attacked or injured at her home by the dog of the defendant by reason of its running upon or against her in such manner as to knock the plaintiff from her back steps and thereby throwing her with great force and violence to and upon the ground.  The complaint alleges the peaceful conduct of the plaintiff, negatives any provocation on her part, and sets forth verbatim Chapter 8, Section 12(d) of the Statutes, and alleges the injuries and damages.  If the statute applies to this case, there is no need to allege knowledge of the owner, negligence of the owner, or that the defendant in any way contributed to or by any act of his caused the occurrence in question.  The statute is entitled "Dogs attacking or injuring person—Liability of owner."  This court cannot agree with the contention of the defendant that the words "attacks or injures" must be construed to mean "attacks and injures."  If the Legislature had intended to say "and" instead of "or" they could have very easily done so.  But instead the statute as written uses the word "or."  As said in the case of Voight v. Industrial Commission, 297 Ill. 109, at page 114, "The word 'or' is sometimes considered to mean 'and,' and *vice versa,* in the construction of statutes.  This is not done except in cases where there is an apparent repugnance or inconsistency in a statute that would defeat its main intent and purpose.  When these words are found in a statute and their accurate reading does not render the sense dubious they should be read and interpreted as written in the statute.  (People v. VanCleave, 187 Ill. 125.)"

476

The defendant cites the case of Winner v. Kadow, 373 Ill. 192, in support of his contention that the word "or" as used in the statute must be construed as "and." A reading of that case fails to support that contention. That case, at page 195, says:—"Statutes must, if possible, be so construed as to give effect to each word, clause or sentence in order that no such word, clause or sentence may be deemed superfluous or void. (People v. Flynn, 265 Ill. 414; Consumers Co. v. Industrial Com. 364 id. 145.)"

██ The defendant cites the case of Bossert v. Wabash R. Co., 338 Ill. App. 488, to support the theory that the rule of ejusdem generis applies to this statute. The rule of ejusdem generis is that general words following particular ones should be construed as meaning of the same general character, sort, kind or class with those named. Holmes v. Rolando, 320 Ill. App. 475; Bullman v. City of Chicago, 367 Ill. 217; Bossert v. Wabash R. Co., 338 Ill. App. 488. Here two words were used, "attacks" or "injures." It is difficult to see how either of the two words could be held to be a particular word, and the other a general. Each imports a definite act. The words are not words of a similar meaning. As argued by the defendant, there can be an attack without any injury. Similarly there can be an injury without an attack. This court would only be justified in construing the statute where there is an inconsistency or repugnancy. Ordinarily, the words of a statute must be given their plain and ordinary meaning. The plain and obvious meaning of the language used by the legislature is the safest guide to follow in construing any act. Landry v. Shinner & Co., 344 Ill. 579; Howlett v. McGarvey, 334 Ill. App. 512. Reading the statute and giving to the words used their plain and ordinary meaning, it must be recognized that the legislature intended to create two lia-

bilities on the part of the owner of a dog, one if the animal injured a person who is peaceably conducting himself in a place he may lawfully be, or one if the animal attacks a person under such circumstances. To hold otherwise would be to negative the clear intent of the legislature as this court interprets the language used.

The position of the defendant that the words "attacks or injures" should be construed as meaning "attacks and injures," as set forth in his brief, is inconsistent with defendant's Instruction No. 33, given by the court, which predicated a finding of liability upon the jury finding from the evidence that the dog did attack or injure the plaintiff. In the case of Jones v. Stoneware Pipe Co., 277 Ill. App. 18, that court said: ". . . a party cannot, upon appeal, seek to avoid liability upon a theory inconsistent with instructions which such party caused to be given upon the trial."

But, the defendant contends that the plaintiff provoked the occurrence she complains of, because she knew the characteristics of the dog, and because she untied and fed the dog, she is not entitled to recover. The only evidence that would support the contention that the plaintiff knew the characteristics of the dog, would be her own evidence that she had seen the dog, knew that it belonged to her son-in-law and that she had seen it at her home and at the home of her son-in-law. There is nothing in the evidence to support the theory that the dog was of such a character that the plaintiff should have known it would run between her legs and cause her to be injured. A "characteristic" would imply some trait or habit of the dog. But no trait or habit of the dog is in evidence, except that it was a puppy and the probable general knowledge of all persons as to the antics and behavior of a puppy. In further support of his contention of

478

provocation on the part of the plaintiff, the defendant refers to the fact that the plaintiff untied and fed the dog. If there had been any evidence of viciousness or acts of the dog, so that the plaintiff knew or could have known by the exercise of ordinary care, that the dog would run into her, or between her legs so as to injure her, there might be some merit in this contention. Where the plaintiff injured knew the characteristics of the animal, and ignored them or did some act that could be construed as contributing to her own injury, she could not recover for injuries. The two cases cited by the defendant, Weide v. Thiel, 9 Ill. App. 223 and Hapke v. Huston, 301 Ill. App. 191, were both cases of vicious and dangerous bulls, and the plaintiff in each case knew the nature and characteristics of the animals. Such a situation does not exist here. The plaintiff testified: "The dog had never on any prior occasion jumped on or attacked or bothered me in any way." The mere acts of untying the dog and feeding it, in the absence of any evidence of any characteristic or action of the dog that would tend to apprise the plaintiff that she might be injured by the dog, are not acts of provocation on her part.

■ The defendant finally contends that the plaintiff is not entitled to recover because she was harboring or keeping the dog at the time of the injury. Two cases in Illinois are cited by the defendant in support of this contention. Neither seems to be in point with the facts here. There is nothing in the record to show that the plaintiff did any act consonant with keeping or harboring the dog. She did not know the dog was even on her premises and only learned it when she went into her back yard. The casual act of feeding or watering the dog is not such an act that would constitute keeping or harboring. One of the cases cited by the defendant, Abraham v. Ibsen, 213 Ill. App. 210, would seem to be authority that the defendant, father

479

of the two boys who had the dog, was in fact and in law the keeper of the dog, since the dog was in the charge of his two sons, and was kept at his home. In the defendant's testimony, he testified that he owned the dog. He further testified that he had had the dog about two weeks before the occurrence which is the basis of this suit. In the Abraham v. Ibsen case the court held that the question of harboring or keeping was a question for the jury. The question of whether or not the plaintiff was harboring or keeping the dog in question at or immediately prior to the time of the injury of which the plaintiff complained, was submitted to a jury in this case by special interrogatory, and the jury answered "No."

A number of cases from other jurisdictions are cited by both the plaintiff and the defendant in this case. It would serve no useful purpose to go at length into these cases, since each case presented a different set of facts and circumstances.

In our view of this cause, the statute applies and the jury having found the defendant "Guilty" and assessed damages, we are not disposed, in the absence of any evidence to show that the plaintiff did any act that would constitute provocation, and the absence of any testimony of acts that would make the plaintiff the keeper or harborer of the dog, to disturb the finding of the jury.

█ It is not the province or function of this court to rewrite statutes by judicial interpretation. It can only interpret the statutes from the words used, giving the words their plain and obvious meaning. If the legislature intended otherwise, only the legislature can provide the remedy by amendment or revision. In the opinion of this court, the word "or" was used by the legislature in a disjunctive sense, and was intended to provide two separate and distinct remedies, one for an attack and one for an injury, and the remedy is

480

not limited to both attack and injury, as contended by the defendant. To hold otherwise would be to give the plain and ordinary meaning of the words used, a tortuous and strained construction.

The judgment of the Circuit Court will be affirmed.

Affirmed.

CARROLL, P. J. and ROETH, J., concur.