279 N.J. Super. 396 (1995)
652 A.2d 1250
ANDRE RODRIGUEZ, PLAINTIFF-APPELLANT,
v.
ROSE CORDASCO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1995.
Decided February 6, 1995.
*399 Before Judges PETRELLA, HAVEY and CUFF.
Ginarte, O'Dwyer, Winograd & Laracuente, attorneys for appellant (Richard M. Winograd, on the brief).
Scanlon & Akin, attorneys for respondent Rose Cordasco (Maria M. Romani, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The issue in this appeal is whether a person who feeds stray dogs on her property owes a duty to the public to protect against the danger those animals may present to passersby on an abutting sidewalk. The Law Division held there was no such duty in the case presented and granted summary judgment in favor of defendant Rose Cordasco. We agree and affirm.
On appeal, plaintiff Andre Rodriguez argues that the motion judge erred in granting summary judgment[1] because there were material issues of fact in dispute. In addition, he argues that the judge erred in concluding that as a matter of law a defendant-homeowner who makes a practice of attracting stray dogs by repeatedly feeding them and allowing them access to her property, is not liable to passersby who are injured by the action of the animals. Finally, Rodriguez argues that Cordasco, as the owner and occupier of property abutting a negligently maintained sidewalk, is liable to him for injuries sustained as a result of a fall on that sidewalk while attempting to run from the dogs.
The underlying facts may be briefly stated. At about 4:00 p.m. on March 1, 1993, Rodriguez was walking on the sidewalk in front of Cordasco's one-family, two-story residence on Seventh Avenue in Newark. He was on his way to a bus stop and claims that as he passed Cordasco's residence two or three dogs came from Cordasco's *400 unfenced yard and began to chase him. Rodriguez quickened his pace to avoid the dogs, but tripped and fell on a raised portion of the sidewalk abutting Cordasco's residence, injuring his right knee.
Rodriguez does not dispute that Cordasco did not own the dogs, but asserts that she was a "keeper" of the dogs and should bear responsibility for injuries he sustained when he fell.[2]
In his deposition Rodriguez testified that he had been walking past the Cordasco house daily for about eight months and that the stray dogs which chased him "always" eat in the back of Cordasco's house. However, he did not know what they were eating nor did he know if it was Cordasco who was feeding them. After the motion judge granted summary judgment in favor of Cordasco, Rodriguez made a motion for reconsideration and indicated that he could obtain a statement from a witness who would corroborate his assertion that Cordasco left food out for stray dogs on several occasions. The judge, in denying the motion for reconsideration, held that even if Cordasco fed the stray dogs, she did not owe a duty of care to the public to protect against the actions of those dogs.
Cordasco acknowledged in her deposition that stray dogs occasionally came onto her property and would often approach her as she tried to enter her car. She indicated that she would sometimes throw them biscuits to "bribe" them away from the car, but she asserted that she never left food out for them. She also stated that she called a Newark agency on several occasions trying to rid the neighborhood of the stray dogs.
In granting summary judgment in favor of Cordasco the motion judge appropriately gave Rodriguez the benefit of all of the reasonable inferences. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954); R. 4:46-2. For *401 the purpose of this appeal we also resolve all factual disputes in his favor. Antheunisse v. Tiffany & Co., 229 N.J. Super. 399, 402, 551 A.2d 1006 (App.Div. 1988), certif. denied, 115 N.J. 59, 556 A.2d 1206 (1989).
New Jersey's "dog bite" statute (N.J.S.A. 4:19-16) imposes liability on dog owners in certain instances. That statute is inapplicable here and affords no basis for Rodriguez's claim. There was no "bite" inflicted on Rodriguez and the dogs apparently did not make contact with or physically touch him in any fashion. Hayes v. Mongiovi, 121 N.J. Super. 272, 275, 296 A.2d 567 (Cty.Ct. 1972), aff'd o.b., 125 N.J. Super. 413, 311 A.2d 207 (App.Div. 1973).
A common law cause of action in strict liability against Cordasco is likewise unavailable here. To establish such liability Rodriguez would have to show that Cordasco owned the dog (or perhaps was its "keeper") and had knowledge of its mischievous or vicious propensities. Jannuzzelli v. Wilkens, 158 N.J. Super. 36, 41, 385 A.2d 322 (App.Div. 1978); Prosser and Keeton, The Law of Torts, § 76, at 542 (5th ed. 1984). The record does not indicate any basis for holding Cordasco strictly liable due to any knowledge of mischievous propensities of the stray dogs.[3] Hence, Rodriguez is left with a potential claim based on negligence.
An owner or keeper of an animal may be liable for negligence in controlling it. DeRobertis v. Randazzo, 94 N.J. 144, 156, 462 A.2d 1260 (1983); 3A C.J.S. Animals § 188, at 690 ("A dog's owner or keeper who has been negligent with respect to its keeping or control may be liable for injuries proximately resulting therefrom irrespective of whether there was a known vicious propensity...."); 4 Am.Jur.2d Animals § 89, at 337 ("The owner or keeper of a domestic animal is charged with knowledge of the *402 natural propensities of animals of the particular class to which this animal belongs, and, if these propensities are of the kind that might cause injury he must exercise the care necessary to prevent such injuries as may be anticipated."). Rodriguez must therefore establish that Cordasco was either the owner of the stray dog or dogs or responsible for their care. Rodriguez must also establish that Cordasco was negligent in failing to control the stray dogs that caused the injury. DeRobertis v. Randazzo, supra, 94 N.J. at 156, 462 A.2d 1260. Rodriguez has made no showing that Cordasco was an "owner" or even a "keeper" of the offending stray dogs, and, therefore, his negligence cause of action fails. Cf. Mascola v. Mascola, 168 N.J. Super. 122, 126-127, 401 A.2d 1114 (App.Div. 1979) ("one not an owner of a vicious dog may be liable as a keeper, if he is in fact such and has knowledge of its vicious disposition").
In Linebaugh v. Hyndman, 213 N.J. Super. 117, 516 A.2d 638 (App.Div. 1986), aff'd o.b., 106 N.J. 556, 524 A.2d 1255 (1987), a "dog bite" case, we held that there was sufficient basis for a negligence action against a landlord where the landlord was aware that a dog with vicious propensities was kept on the property. Linebaugh based liability on the maintenance of an "artificial [dangerous] condition on the property" which resulted from the landlord's failure to protect the tenants and their invitees from the known danger of a vicious animal. Id., 213 N.J. Super. at 121, 516 A.2d 638. This case is distinguishable from Linebaugh because the incident occurred off Cordasco's property and there was no indication that she had knowledge of any vicious propensities of the stray dog or dogs. See also Steinberg v. Petta, 114 Ill.2d 496, 103 Ill.Dec. 725, 501 N.E.2d 1263 (1986) (involved the liability of a landlord under a local statute; an action at common law, unlike that under the statute, required proof that the dog was vicious and that defendant had knowledge thereof).
No New Jersey case supports plaintiff's claim of liability. Thus, Rodriguez relies on authorities from other jurisdictions. These cases, however, are inapposite. For example, Verrett v. Silver, *403 309 Minn. 275, 244 N.W.2d 147 (1976), involved a five-year-old boy who was bitten by a dog which ran from defendant's yard and returned there after the incident. It was undisputed that the dog was staying at defendant's home. Id., 244 N.W.2d at 148. Plaintiff successfully established defendant's liability under that state's "dog bite" statute which provided:
If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be in any urban area, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog. ...
[Id. n. 1 (emphasis supplied).]
In interpreting the statute, the Verrett court stated:

Harboring or keeping a dog means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog. Keeping a dog, as used in the statute before us, implies more than the mere harboring of the dog for a limited purpose or time. One becomes the keeper of a dog only when he either with or without the owner's permission undertakes to manage, control, or care for it as dog owners in general are accustomed to do.
[Id. at 149 (emphasis supplied).]
Christie v. Anchorage Yacht Haven, Inc., 287 So.2d 359 (Fla.Ct. App. 1973), and Hampton v. Hammons, 743 P.2d 1053 (Okl. 1987), are equally inapplicable and unpersuasive. As in Verrett, supra, local "dog bite" statutes were implicated. Christie noted that to define the statutory term "owner" as "the possessor, keeper, or custodian of the animal," was "not without supporting authority." The Christie court, however, declined to decide the issue because in that case it was clear that none of the defendants were keepers of the dog. 287 So.2d at 360.
In Hampton the statute specifically defined "owner" as "a person with a legal right to possession but also includes anyone who cares for, has custody of, keeps or maintains any dog, cat, or domestic animal." 743 P.2d at 1055-1056. Moreover, in Hampton the defendant was clearly at least the keeper of the dog that defendant was watching for her son and had chained in her yard. Id. at 1055.
*404 Williams v. Pohlman, 146 Ind. App. 523, 257 N.E.2d 329 (1970) (animal hospital that housed dog could be liable as a "keeper" for injury caused by dog's known vicious propensities), and Papke v. Tribbey, 68 Mich. App. 130, 242 N.W.2d 38 (1976) (owner of domestic animal with knowledge of its vicious propensities strictly liable for injury), are also inapposite. The defendants in those cases actually housed and cared for the offending animals and had knowledge of their vicious propensities.
McEvoy v. Brown, 17 Ill. App.2d 470, 150 N.E.2d 652 (1958), also relied on by plaintiff, involved an Illinois statute similar to that in Verrett v. Silver, supra. McEvoy held that under that statute, a person who is either attacked or injured by the dog may maintain a cause of action against its owner. Id., 150 N.E.2d at 654. The question of whether the defendant was a "harborer or keeper" was one for the jury. However, "[t]he casual act of feeding or watering the dog is not such an act that would constitute keeping or harboring." Ibid.
A stray dog, by definition, is not owned or controlled by anyone. The proposition that one can be liable as a keeper of a stray dog is logically inconsistent; sporadic feeding of a stray animal does not create ownership responsibility for it. As noted, McEvoy, which Rodriguez relies on to support his theory of liability, specifically rejected the argument that the casual feeding of an animal constitutes "keeping" it. We also reject that argument.
Rodriguez also appears to argue that by feeding the stray dogs, Cordasco maintained a public nuisance.[4] This argument was *405 not raised below nor was it delineated as such as required by R. 2:6-2. Rodriguez urges for the first time on appeal that by feeding stray dogs Cordasco has maintained an "unreasonable" condition on her real property. Since it was not raised below, we need not address the issue. R. 2:10-2.
Rodriguez acknowledges that under current New Jersey law, residential property owners cannot be held liable for defects in the abutting sidewalk absent negligent construction or repair of it. See Borges v. Hamed, 247 N.J. Super. 295, 589 A.2d 169 (App.Div. 1991), affirming 247 N.J. Super. 353, 589 A.2d 199 (Law Div. 1990) (refusing to impose sidewalk liability on owner of three-family house where two of three apartments were occupied by family members, because it was not a "commercial property"); Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981).
Nevertheless, Rodriguez argues that we should extend the Stewart rule to residential landowners. This court is bound by the decisions of our Supreme Court. Such a drastic change in the law is a matter for that Court or the Legislature and we decline the invitation to institute a change in established law.
Affirmed.
NOTES
[1] At the time of the hearing of the summary judgment motion the parties had exchanged interrogatories and Cordasco and Rodriguez had been deposed.
[2] Cordasco apparently does own a nine-year old Doberman Pinscher that she keeps indoors. It was not involved with Rodriguez's fall.
[3] The record does not reflect that these stray dogs possessed any vicious propensities. They may have been playful or curious. Rodriguez's injury was caused by his trip and fall on the sidewalk. There is no indication in the record that the dogs bit, scratched, or touched him even after he fell.
[4] In support of this proposition, Rodriguez cites the wholly inapposite case of Rhabb v. New York City Housing Authority, 41 N.Y.2d 200, 391 N.Y.S.2d 540, 359 N.E.2d 1335 (1976). Rhabb did not involve the theory of public nuisance, but rather the duty of a municipality to maintain its playground facilities in a safe condition. Id., 391 N.Y.S.2d at 542, 359 N.E.2d at 1335. The Rhabb court held that the municipality could be liable for a dog attack which occurred on its property where the dog belonged to a municipal employee and had attacked children on the playground on numerous occasions. Ibid.