# Illinois Official Reports

## Appellate Court

---

### *Parikh v. Gilchrist*, 2017 IL App (1st) 160532

---

| | |
|---|---|
| Appellate Court Caption | BIJAL PARIKH, Plaintiff-Appellant, v. FORBES D. GILCHRIST and JOYCE A. GILCHRIST, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-16-0532 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | July 17, 2017<br><br>October 11, 2017<br>October 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-6027; the Hon. Donald J. Suriano, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas J. Esp and Laura M. Maul, of Esp Kreuzer Cores LLP, of Wheaton, for appellant.<br><br>Ellen J. O'Rourke and Kenneth E. Klimczak, of Bruce Farrel Dorn & Associates, of Chicago, for appellees. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Connors and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1     A jury found in favor of defendants, Forbes D. Gilchrist and Joyce A. Gilchrist, in a case brought by the plaintiff, Bijal Parikh, under the Animal Control Act (Act) (510 ILCS 5/16 (West 2012)). On appeal, Mr. Parikh argues that the jury's verdict was against the manifest weight of the evidence and the trial court improperly refused to give a non-Illinois Pattern Jury Instruction (IPI). For the following reasons, we affirm.

¶ 2                                         BACKGROUND

¶ 3     Mr. Parikh filed a one-count complaint against the Gilchrists seeking damages under the Animal Control Act. He alleged that the Gilchrists' dog chased him, causing him to fall and injure his knee. Under the Act, "[i]f a dog ***, without provocation, attacks, attempts to attack, or injures any person *** in any place where he or she may lawfully be, the owner of such dog *** is liable *** for the full amount of the injury proximately caused thereby." 510 ILCS 5/16 (West 2012).

¶ 4     Trial witnesses referred to photo exhibits that are not in the record on appeal, and we therefore cannot consider them. See *People v. Heaton*, 266 Ill. App. 3d 469, 476 (1994) ("[E]vidence which is not part of the record on appeal is not to be considered by a reviewing court ***."). We will, however, review the evidence that is included in the record.

¶ 5     Mr. Parikh testified that he and his family had lived in their house since December 2012. He knew the Gilchrists, his neighbors, had a dog, but he had never had contact with it. On April 30, 2013, Mr. Parikh got home from work and took his 19-month-old daughter outside to play in the front yard. He then decided to take his daughter to the backyard, so he picked her up, walked to the path on the west side of his house, and began walking toward the back. He had walked past the Gilchrists' shed—though he never entered their property—when he saw their dog tied to a plastic chair in their backyard. When he first saw the dog, he testified that it was 10 to 15 feet away from him in the Gilchrists' yard. The dog began barking at Mr. Parikh and his daughter and then "took off with the chair." Mr. Parikh's daughter began crying in his arms, and the dog started to run toward him with the chair. Mr. Parikh was concerned for his daughter's safety and did not know what the dog would do. He turned and ran back up the side of his property toward his garage.

¶ 6     As he ran, Mr. Parikh could hear the dog and the chair. He testified that he looked over to see if the dog was going to catch up to him. The first door to the garage was open. Mr. Parikh entered, "trying to get around [his] car and make sure *** the steel railings d[id]n't hit [him] or his daughter." Mrs. Parikh's car was parked next to his car and "by the time [he] past [*sic*] her car that's where [he] fell." Mr. Parikh turned his body as he fell so that his daughter did not get hurt and landed on his back with his daughter on his stomach. He could not get back up because of pain in his right knee.

¶ 7     Mr. Parikh used his cell phone to call his wife, who came, picked up their daughter, and called 911. Paramedics took Mr. Parikh to the hospital, where he had surgery on his shattered knee. Doctors installed screws and wires, which were still in his knee at the time of trial.

¶ 8     On cross-examination, Mr. Parikh testified that he was not afraid of dogs and would not run if a dog merely wanted to "play." Before April 30, 2013, he had never seen the Gilchrists' dog anywhere but their backyard and had never heard it bark. There is a lot of

- 2 -

vegetation between the Gilchrists' and Mr. Parikh's yards. Mr. Parikh had a sprinkler system in place to water the lawn in the summer but did not recall if he had it on that particular day. Mr. Parikh was not sure how far away the dog was when he turned to run. He could not estimate how far he had to run to get back to his garage or how long it took him. Although he peeked back at one point, he could not estimate how close the dog ever got to him. Mr. Parikh kept running but had to slow down to make the sharp turn into the garage. The dog never caught up to him. Mr. Parikh's flip-flops were wet from the grass. He acknowledged that he told hospital personnel that his shoes were wet, he lost his balance, and he slipped in his garage. After he fell, he did not see the dog anywhere in the area. Due to the foliage and the Gilchrists' shed, he would not have been able to see Mrs. Gilchrist if she had been watering the garden.

¶ 9    Mr. Parikh's wife, Vishwa Parikh, testified that she could see the Gilchrists' backyard through her kitchen windows. She had seen the Gilchrists' dog sitting or walking, but she had never had contact with it. On April 30, 2013, Mr. Parikh got home from work, changed into sandals, and took their daughter outside to play. Mrs. Parikh went upstairs and, looking out an upper window, could see the Gilchrists' dog tied to a plastic chair in their backyard. As she made her way back downstairs, she saw her husband and daughter playing in the front driveway. From the kitchen window, she observed that the Gilchrists' dog was no longer where she had seen it.

¶ 10    Mrs. Parikh heard barking between the two houses. The house phone then rang. It was Mr. Parikh, who told her to come to the garage. She could hear her daughter crying in the background. In the garage, she found Mr. Parikh lying on the floor, holding their crying daughter on his stomach. Mrs. Parikh testified that both their cars were parked in the garage that day. She asked Mr. Parikh what happened and he said, "that stupid dog ran after us and I fell." Mrs. Parikh called an ambulance to take her husband to the hospital. As Mr. Parikh was being attended to, Mrs. Parikh saw Mrs. Gilchrist standing with her dog in the Parikhs' side yard. Mrs. Gilchrist asked what happened, and Mrs. Parikh stated, "your dog ran after my baby and my husband."

¶ 11    On cross-examination, Mrs. Parikh testified that, whenever she had witnessed the Gilchrists giving their dog commands in the past, the dog obeyed them. She also testified that only one of two garage doors was open. She acknowledged that someone running from the side of the house and into the garage door would have to make a sharp turn around the corner of the house to squeeze by the cars.

¶ 12    Joyce Gilchrist testified that, on April 30, 2013, she lived with her husband and their dog in their home next door to the Parikhs. That day, the Gilchrists were in their yard gardening. Mrs. Gilchrist had brought the dog out in the yard on a leash and attached it to a plastic chair. She knew that the chair was not sufficient to secure the dog and that, if the dog moved, the chair would move with it. She did not see Mr. Parikh or his family in their yard that day. After about an hour of gardening, Mr. Gilchrist went inside. Mrs. Gilchrist went to water the garden on the southwest corner of their property. She could see the dog in the backyard but could not see all the way to Mr. Parikh's property line due to the foliage and the Gilchrists' shed.

¶ 13    While Mrs. Gilchrist was watering her garden, she heard what sounded like a chair moving over grass. She looked where the dog had been but did not see it. She yelled its name three times. Mrs. Gilchrist ran toward the street in front of her house because she thought the

- 3 -

dog might have gone to her front yard chasing a rabbit or squirrel. She spotted it lying on the property line between the Gilchrists' and the Parikhs' homes. The plastic chair was still attached to the dog, but the chair was on the Parikhs' property.

¶ 14    Mrs. Gilchrist testified that the dog had stopped because she had called its name, as it always obeyed her. She observed that it was not panting like it had been running. Mrs. Gilchrist took the dog by its leash and began walking up the path along the side of her house to put it inside. She came back outside and saw paramedics arrive at the Parikhs' house. Mrs. Gilchrist went to the end of her driveway and saw Mr. Parikh lying next to the stairs inside his garage. Mrs. Parikh walked over to her, holding her child, and told her that the Gilchrists' dog had attacked Mr. Parikh and her baby.

¶ 15    Forbes Gilchrist testified that he had lived at his home since 1979. The Gilchrists owned a 2½-year-old male German shepherd, who weighed approximately 50 pounds. There was no fence around the Gilchrists' backyard, but at one time Mr. Gilchrist had trained his dog with an electronically-defined perimeter fence marked with white flags and a collar that shocked it whenever it left the backyard. The dog learned that its "domain" did not extend beyond this area. It also learned to obey voice commands. If either of the Gilchrists called the dog's name without any command and it was away from them, it would stop what it was doing and sit.

¶ 16    On April 30, 2013, the Gilchrists were gardening in the backyard. Their dog was tied to a plastic chair, approximately 50 feet from the Parikhs' property, which abutted their property to the east. There was foliage that separated the Gilchrists' backyard from the Parikhs' property. Mr. Gilchrist knew that, if his dog moved for any reason, the chair would move with it. Before going inside that day, he had not seen Mr. Parikh in his backyard. He did not see his dog after going inside until Mrs. Gilchrist came inside with the dog. At some point, Mr. Gilchrist became aware that emergency personnel were at the Parikhs' house, and he went over to discover that Mr. Parikh had been injured and was lying by a car.

¶ 17    It was stipulated that Des Plaines police officer Erik Bjork would testify that he was called to Mr. Parikh's home to assist paramedics. Bjork wrote in his report that Mr. Parikh stated he was holding his daughter when the dog "was attempting to play and chase[d] [Mr. Parikh] into his garage when fell on his right knee." He also reported that he spoke to Mr. Gilchrist, who stated the dog "was tied to a chair and must have got loose and was unaware of the incident."

¶ 18    During the jury instruction conference, without objection, the court agreed to give the following IPI instruction:

> "The law provides that the owner of an animal is liable in damages for injuries sustained from any attack or injury by the animal on a person peacefully conducting himself in a place where he may lawfully be." Illinois Pattern Jury Instructions, Civil, No. 110.04 (2009) (hereinafter, IPI Civil (2009) No. 110.04).

¶ 19    The court refused to give the following non-IPI instruction tendered by Mr. Parikh:

> "A 'dog or other animal' may cause an injury in one of two ways: one by an aggressive violent action designed to inflict injury and two, by an action which is in itself harmless but under a particular set of facts results in an injury. The phrase 'attacks or injures' merely states that both forms of conduct may form the basis of an action under the statute [Animal Control Act]."

¶ 20    The jury found that the Gilchrists were not liable under section 16 of the Animal Control Act for Mr. Parikh's injury. The court entered judgment on the jury verdict. It denied Mr. Parikh's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

¶ 21                                    JURISDICTION

¶ 22    Mr. Parikh's posttrial motion was denied on January 20, 2016, and he timely filed his notice of appeal on February 18, 2016. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303, governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 23                                     ANALYSIS

¶ 24                                  A. Jury Verdict

¶ 25    On appeal, Mr. Parikh argues first that the jury's verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the jury's findings appear unreasonable, arbitrary, or not based on the evidence. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999).

¶ 26    Under section 16 of the Act, there are four elements that a plaintiff must prove: (1) injury caused by an animal owned by the defendants, (2) lack of provocation, (3) peaceable conduct of the person injured, and (4) the presence of the injured person in a place where he or she has a legal right to be. *Robinson v. Meadows*, 203 Ill. App. 3d 706, 709-10 (1990). The plaintiff does need not to prove that there was an attack; any action by the animal that causes injury will suffice, even if that action is harmless in itself. See *Chittum v. Evanston Fuel & Material Co.*, 92 Ill. App. 3d 188, 191 (1980). The only thing that the Gilchrists disputed is the first element of the Act: whether the Gilchrists' dog was the cause of Mr. Parikh's knee injury.

¶ 27    Mr. Parikh argues that the jury's verdict was against the manifest weight of the evidence because "[d]efendants offered no other explanation for the fall other than the argument that there was no need for [Mr. Parikh] to be running from the dog" and, therefore, "it is clear that it was *** [the dog] chas[ing] him *** that was the proximate cause of Mr. Parikh's injury." The Gilchrists respond that there was evidence that could support a jury verdict that the dog was not the proximate cause of Mr. Parikh's fall.

¶ 28    The proximate cause of an injury is, in most cases, a question of fact to be determined from all the attending circumstances. *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 11 (2006). It can only be a question of law when the facts are not only undisputed but also such that there can be no difference in the judgment of reasonable people as to the inferences to be drawn from them. *Id.* An animal is the proximate cause of injury to a person if the injury was caused by the conduct of the dog and not by some independent act of the plaintiff or others. *King v. Ohren*, 198 Ill. App. 3d 1098, 1101 (1990) (citing *Taylor v. Hull*, 7 Ill. App. 3d 218, 219 (1972)). As noted above, the animal does not have to attack the plaintiff to be the cause of the plaintiff's injury. See *Chittum*, 92 Ill. App. 3d at 191.

¶ 29    There was evidence that the dog did not leave the Gilchrists' property. It was undisputed that Mrs. Gilchrist found the dog on the Gilchrists' property line. Mr. Gilchrist testified that

he had trained the dog to not leave the yard "beg[inning] by walking around the perimeter *** and then [he] bought a wireless fence." Mr. Parikh admitted that he did not know how close the dog was when he fell. Mr. Parikh identified where he last saw the dog on photographs, but as the marked photographs are not in the record, we must presume they support the jury's finding. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Moreover, even if we were to assume that Mr. Parikh pointed to a spot on the photographs that put the dog close to or on his property, the jury was entitled to give greater weight to the Gilchrists' testimony that the dog would not leave their property. Thus, the jury had a basis for concluding that the dog never got close to Mr. Parikh or went onto his property. In addition, Mr. Parikh admitted his flip-flops were wet and that he made a sharp turn into his garage. While discussing his injury with hospital staff, he told them that his shoes were wet and he slipped in his garage.

¶ 30        Mr. Parikh relies on *McEvoy v. Brown*, 17 Ill. App. 2d 470, 474 (1958), where the court noted that the dog was the cause of the plaintiff's injuries and that "[w]hether she was tipped, tripped, thrown, bumped, or was caused to lose her balance by reason of the dog running between her legs, is immaterial." However, in that case the court was affirming a jury verdict in favor of the plaintiff. *Id.* at 481. As the Gilchrists point out, this case is more similar to *Aldridge v. Jensen*, 124 Ill. App. 2d 444, 446 (1970), where the jury had found in favor of the defendant dog owners. In that case the plaintiff was riding her bicycle, and some dogs were chasing her. *Id.* at 445. She testified that she accelerated her bicycle and lost control. *Id.* at 446. She also indicated that she might have hit a stone and flipped. *Id.* The court concluded that because "differing inferences may be drawn from the evidence" and "it [could] be said that the evidence presented the question of whether the injury was caused by the conduct of the dogs or by some act or omission of plaintiff," it would not disturb the jury's resolution of the issue in favor of the defendants. *Id.* Similarly, in this case, different inferences could be drawn from the testimony. The jury verdict is not against the manifest weight of the evidence and will not be overturned on appeal.

¶ 31                                    B. Jury Instruction
¶ 32        Mr. Parikh also argues that the trial court abused its discretion by refusing to give his tendered non-IPI jury instruction that would have further defined the phrase "attacks, attempts to attack, or injures" as used in the Animal Control Act. He asserts the jury might have wrongfully assumed that section 16 of the Act required actual physical contact between Mr. Parikh and the dog for the Gilchrists to be liable. The Gilchrists respond that the court did not abuse its discretion in refusing to give Mr. Parikh's non-IPI instruction because the IPI instruction properly explained the law and the non-IPI instruction was confusing.

¶ 33        Illinois Supreme Court Rule 239(a) (eff. Apr. 8, 2013) provides that the applicable civil IPI instructions shall be given unless the court determines that they do not accurately state the law. Rule 239(a) also provides that an impartial non-IPI instruction may be given if the IPI instruction does not accurately state the law or does not cover a subject on which the jury should be instructed. *Id.* It is within the discretion of the trial court to give a non-IPI instruction. *People v. Gilliam*, 172 Ill. 2d 484, 519 (1996). The court's decision on whether to use a non-IPI instruction should not be disturbed absent an abuse of that discretion. *People v. Hudson*, 222 Ill. 2d 392, 400 (2006).

¶ 34    It is settled that "[w]hen the terms in question [in jury instructions] are of general use, and are not technical terms or words of art, they need not be defined, in the absence of anything in the charge to obscure their meaning." *People v. Monroe*, 32 Ill. App. 3d 482, 488 (1975). "[W]here a word or phrase is self-defining or commonly understood, the trial court's failure to define the term during jury instructions is not reversible error." *People v. Delgado*, 376 Ill. App. 3d 307, 314 (2007).

¶ 35    During the jury instruction conference, without objection, the court agreed to give the following IPI instruction:

> "The law provides that the owner of an animal is liable in damages for injuries sustained from any attack or injury by the animal on a person peacefully conducting himself in a place where he may lawfully be." IPI Civil (2009) No. 110.04.

There is no question that this instruction accurately reflects section 16 of the Animal Control Act and tracks the statutory language that provides for liability where the dog attacks, attempts to attack, or injures the plaintiff.

¶ 36    The court refused the following non-IPI instruction requested by Mr. Parikh:

> "A 'dog or other animal' may cause an injury in one of two ways: one by an aggressive violent action designed to inflict injury and two, by an action which is in itself harmless but under a particular set of facts results in an injury. The phrase 'attacks or injures' merely states that both forms of conduct may form the basis of an action under the statute [Animal Control Act]."

The proposed instruction is a quote from *Chittum*, 92 Ill. App. 3d at 191. Mr. Parikh's counsel asserted that the instruction was necessary because of the special circumstances of the case and to further define the phrase "attacks, attempts to attack, or injures" in the Act to make it clear that the Gilchrists could be liable even if their dog never physically touched Mr. Parikh.

¶ 37    *Chittum* is one of several cases in which this court has considered whether, under section 16 of the Act, the phrase "attacks or injures" is limited to instances where an animal attacks a person. See, *e.g.*, *McEvoy*, 17 Ill. App. 2d at 476 (declining to find the statute's use of the words " 'attacks or injures' " actually meant " 'attacks and injures' "); *Taylor*, 7 Ill. App. 3d at 219 (following *McEvoy* to find that it "is not necessary that a dog attack a person who is injured; it is sufficient that the dog injures the party"). Each of those cases have held that section 16 of the Act is not so limited; rather the "statute clearly and unambiguously provides a remedy for injuries incurred either by an attack or other act of a dog or other animal." *Chittum*, 92 Ill. App. 3d at 190. Though the legislature added the words "attempts to attack" to the statute in 2006, the foregoing case law is entirely consistent with this additional description of a dog's conduct. See Pub. Act 94-819, § 10 (eff. May 31, 2006).

¶ 38    While the tendered instruction was an accurate statement of the law, the trial court did not abuse its discretion in refusing it. The phrase "attacks, attempts to attack, or injures," which Mr. Parikh sought to have the trial court define, is a phrase of common usage and understanding that did not require further definition. The trial court is not required to further define words in a jury instruction that have a commonly understood meaning, particularly when the pattern jury instructions do not suggest that an additional definition is necessary. *People v. Hicks*, 2015 IL App (1st) 120035, ¶¶ 54-56. In fact, the *Chittum* court itself found that the phrase "attacks or injures" is clear and unambiguous, concluding: "[t]he phrase

'attacks or injures' *** accurately and concisely states the two types of conduct which may render an owner liable in damages." *Chittum*, 92 Ill. App. 3d at 190-91. Because the IPI instruction included a phrase that is commonly understood and accurately stated the law for the jury, the trial court did not abuse its discretion in refusing Mr. Parikh's non-IPI instruction seeking to define the words used in that instruction.

¶ 39                                                    CONCLUSION

¶ 40         For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 41         Affirmed.