(No. 50385.—          )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ALAN F. STROMBLAD, Appellee.

*Opinion filed December 4, 1978.*

36

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B.

Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Zaven Peter Tokatlian, Ronald D. Alwin, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Alan Stromblad, was found guilty following a jury trial in the circuit court of Cook County of a violation of Illinois obscenity law (Ill. Rev. Stat. 1973, ch. 38, par. 11—20(a)(1)). The complaint charged defendant with selling a magazine entitled "Fuck Studs," with knowledge of its nature and content or with reckless failure to conduct a reasonable inspection thereof which would have revealed its nature and content. Judgment was entered on the verdict and defendant was placed on probation for one year. The appellate court, with one justice dissenting, reversed on the basis of an error in the jury instructions (55 Ill. App. 3d 511), and remanded the cause for a new trial. We allowed the State's petition for leave to appeal under Rule 315 (65 Ill. 2d R. 315).

Officer George Carey, a Chicago policeman, was the State's only witness. On November 12, 1974, the officer entered the West Town Adult Book Store at 3429 W. North Avenue in Chicago. Magazine racks were located throughout the store and a checkout counter was in the rear. He paid a $1 admission fee to the defendant, who was behind the counter and the only other person present. After looking at various magazines, he picked up the magazine entitled "Fuck Studs," walked to the counter and put it down facing the defendant. Defendant looked at it and requested an extra $4, the $1 admission fee being deducted from the $4.95 price of the magazine. The

defendant then placed the magazine in a paper bag. The officer removed the magazine from the paper bag, identified himself as a police officer and held the magazine in front of the defendant. The officer asked defendant if he would sell a magazine "like this" to a minor. Defendant said he would not; he was careful about people of a youthful age coming into the store. The officer put the magazine back into the bag, took it to the police station and later submitted it to an assistant State's Attorney who presented the magazine to a judge. The officer stated that the judge examined this magazine from the first page to the last and then authorized issuance of an arrest warrant for the seller of this merchandise, on the grounds that there was probable cause to believe a violation of the obscenity laws had been committed.

The magazine was introduced and admitted as an exhibit without objection. Defendant's motion for a directed verdict was denied.

Defendant testified that he was employed at the store as a clerk and that, after the owner opened the store each morning, he would remain in charge until closing time. He had worked in the store since August 1974 and had worked in another adult book store prior to that time. He kept records of all sales, made sure he had the proper money and once in a while took inventory. He would call the distributor, go "down there" and take one or two of the new publications, depending on how the stock was moving. He recounted the officer's visit on November 12, 1974. He described the store's contents, the selections of soft core, erotic magazines, comic books and "what-not." He said that the hard-core publications were in front of the counter. There were approximately 300 magazines. After browsing around, the officer selected the particular book, and put it in front of defendant. After noting the price, defendant charged the officer $4 extra. Defendant admitted the conversation regarding sales to minors. The

officer left saying he would have the book reviewed by a board. Defendant was arrested on a warrant a week later.

The magazine contained the admonition "Adults Only" and a price of $4.95, which was on the face side just above the colored photograph of a nude man and woman engaged in an act of coitus. The book as a whole was comprised of 48 pages, nearly all of which contained color or black-and-white photographs showing a nude man and woman actually engaging in a variety of sexual activities, including coitus, fellatio, and cunnilingus. In most photographs the focal point is the exposed genitals of the persons engaging in sexual activity. The book contains a text entitled "Sex Feast," which culminates in a description of a sex orgy involving two males and two females.

Defendant raised five issues in the appellate court. One was whether the trial court erred by failing to include the phrase "utterly without redeeming social value" in the definition of obscenity given in the jury instructions, while including a more restrictive instruction. The appellate court held that the error in the obscenity instruction was dispositive of the case, and found it unnecessary to address the other issues raised by the defendant. It reversed the judgment of the circuit court and remanded the cause to that court.

It is clear under our decisions that the instruction defining obscenity was erroneous. (*People v. Ridens* (1974), 59 Ill. 2d 362, 373; *People v. Gould* (1975), 60 Ill. 2d 159, 164.) Therefore, the sole issue on this appeal is whether the error in the instructions requires reversal and remandment for a new trial.

In *Memoirs v. Massachusetts* (1966), 383 U.S. 413, 418, 16 L. Ed. 2d 1, 6, 86 S. Ct. 975, 977, a three-justice plurality of the United States Supreme Court defined obscene matter as follows: "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it

affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." In *Miller v. California* (1973), 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615, the court refused to adopt part (c) of the definition of the *Memoirs* plurality, and selected instead a new standard, "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." The Illinois obscenity statute (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) was enacted after *Memoirs* but before *Miller*. This court in *People v. Ridens* (1974), 59 Ill. 2d 362, 373, held that this statute, as construed, adheres to part (c) of the *Memoirs* definition. The court subsequently confirmed that the *Miller* version of part (c) could not be used in Illinois. (*People v. Gould* (1975), 60 Ill. 2d 159, 164.) The instructions given at defendant's trial improperly contained the more restrictive *Miller* version of part (c), but failed to include the *Memoirs* definition of "utterly without redeeming social value."

We hold that the error in instructions entitles defendant to a new trial before a properly instructed jury. The United States Supreme Court was faced with a similar question in *Marks v. United States* (1977), 430 U.S. 188, 51 L. Ed. 2d 260, 97 S. Ct. 990. The defendant there was charged with the transportation of obscene material in interstate commerce. The conduct charged had occurred before the United States Supreme Court adopted the *Miller* standards, but the defendant was convicted by a jury which was instructed under *Miller*. The court held that the due process clause precluded application of the *Miller* standards to the extent they may impose criminal liability for conduct not punishable under *Memoirs*. The defendant was entitled to the *Memoirs* instructions directing the jury to acquit unless it finds the materials involved are "utterly without redeeming social value," and the cause was remanded for a new trial. The court specifically

rejected the approach adopted by the court of appeals, which had refused to reverse the conviction on the grounds that an examination of the record indicated that the material was obscene under either the *Memoirs* or *Miller* standards. The Supreme Court stated:

"But even if we accept the court's conclusion, under these circumstances it is not an adequate substitute for the decision in the first instance of a properly instructed jury, as to this important element of the offense under 18 U.S.C. sec. 1465." *Marks v. United States* (1977), 430 U.S. 188, 196 n.11, 51 L. Ed. 2d 260, 268 n.11, 97 S. Ct. 990, 995 n.11.

The error in the instructions here was in a definition essential for the jury to make a legally permissible determination of defendant's guilt or innocence. It was not a mere technical defect. The jury was misinstructed on a fundamental issue and therefore lacked a tool necessary for the performance of its function of determining whether the prosecution had proved defendant guilty of the offense charged. (See *People v. Jenkins* (1977), 69 Ill. 2d 61, 66; *Bollenbach v. United States* (1946), 326 U.S. 607, 613, 90 L. Ed. 350, 355, 66 S. Ct. 402, 405.) Under these circumstances, the defendant is entitled to a new trial before a properly instructed jury.

In reaching this conclusion we have not evaluated the evidence. As the United States Supreme Court noted in *Bollenbach v. United States* (1946), 326 U.S. 607, 614, 90 L. Ed. 350, 355, 66 S. Ct. 402, 406:

"In view of the Government's insistence that there is abundant evidence to indicate that Bollenbach was implicated in the criminal enterprise from the beginning, it may not be amiss to remind that the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure

and standards appropriate for criminal trials
*** ."

In recent cases this court has reversed convictions without evaluating the evidence to determine if the error is harmless where the jury has not been correctly instructed on an essential element of the State's case. In *People v. Trinkle* (1977), 68 Ill. 2d 198, 203-04, and *People v. Viser* (1975), 62 Ill. 2d 568, 581-83, convictions for attempted murder were reversed for failure to properly instruct the jury on the necessary intent element. See also *Screws v. United States* (1945), 325 U.S. 91, 106-07, 89 L. Ed. 1495, 1505-06, 65 S. Ct. 1031, 1038 (reversing for failure to correctly instruct on an intent element); *United States v. Pope* (6th Cir. 1977), 561 F.2d 663, 670-71 (reversing for failure to adequately inform the jury that "intent to distribute" was an essential element of the offense); *United States v. King* (10th Cir. 1975), 521 F.2d 61, 63 (reversing for failure to instruct that one element of conspiracy is an overt act).

The State urges us to apply the rule set forth in *People v. Truelock* (1966), 35 Ill. 2d 189, 192, that " '[e]ven though error may have been committed in giving or refusing instructions it will not *always* justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' (*People v. Ward,* 32 Ill. 2d 253, 256.)" (Emphasis added.) In the instant case the error was so fundamental that we refrain from evaluating the evidence and exercise the option recognized in *Truelock* of reversing the conviction.

Our duty to undertake an independent review of the facts in obscenity cases to determine whether the material involved is protected by the first amendment (*Jacobellis v. Ohio* (1964), 378 U.S. 184, 187-90, 12 L. Ed. 2d 793, 797-99, 84 S. Ct. 1676, 1677-79; *People v. Ridens* (1974), 59 Ill. 2d 362, 373; see also *Cox v. Louisiana* (1965), 379

U.S. 536, 545, 13 L. Ed. 2d 471, 478, 85 S. Ct. 453, 459) operates as a check on a jury's discretion in determining what material is obscene (*Jenkins v. Georgia* (1974), 418 U.S. 153, 160-61, 41 L. Ed. 2d 642, 649-51, 94 S. Ct. 2750, 2754-55; *Jacobellis v. Ohio* (1964), 378 U.S. 184, 187-88, 12 L. Ed. 2d 793, 797-98, 84 S. Ct. 1676, 1677-78; *Smith v. United States* (1977), 431 U.S. 291, 301, 52 L. Ed. 2d 324, 335, 97 S. Ct. 1756, 1763-64) and serves to protect the exercise of first and fourteenth amendment values (*Miller v. California* (1973), 413 U.S. 15, 25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615; *Kois v. Wisconsin* (1972), 408 U.S. 229, 232, 33 L. Ed. 2d 312, 316, 92 S. Ct. 2245, 2247). In light of the fact that the jury's finding of obscenity here was not based upon proper instructions concerning the definition of obscenity to be applied, there is no proper finding of obscenity to review. Although the magazine here in question may well be found obscene under the more restrictive *Miller* standard, it is not within the authority of this court to sanction a deviation from the *Memoirs* definition espoused by the Illinois obscenity statute. Any change in the law is the legislature's function.

For these reasons the judgment of the appellate court reversing the conviction and remanding for a new trial is affirmed.

*Judgment affirmed.*