THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TERRY TINKLER, Defendant-Appellant.

Third District   No. 79-930

Opinion filed June 30, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Timothy J. Slavin, State's Attorney, of Morrison (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial, defendant Terry Tinkler was convicted of burglary and theft and received concurrent sentences of imprisonment of 4 years for burglary and 150 days for theft. On appeal he contends that the jury instructions on the crime of burglary were erroneous.

At the trial Greg Manon, who was 13 years old, testified that on May 23, 1979, he resided with his parents, his brother Lee, his sister Melody Bender, and defendant. On that date Greg Manon rode his bicycle to the McDaniel house to see if his friend Gary McDaniel was going to ride his bicycle to school. McDaniel told Manon he would not be leaving for a while, and Manon returned home. Shortly thereafter, Manon rode back to the McDaniel house, but his friend was gone. Manon then returned home. He had by then missed the bus and probably could not have made it to school on time by bicycle. At home with Greg Manon at that time were Lee, Melody, and defendant.

Defendant and Greg Manon left to buy cigarettes for Lee and Melody in Coleta. On the way Manon told defendant he wanted to go to

the McDaniel house one more time to see if Gary was home. They did so, and Manon knocked on the front door. When nobody answered, they walked into the unlocked garage, and Manon knocked on another door to the house. There was no answer. They then found a house key; defendant unlocked the door; and they entered the house. According to Manon, he went in because he thought if Gary McDaniel was home, he would be able to hear Manon better. Manon hollered to see if his friend was home, but no one answered. The two wandered about the house and finally left with two pool cues, a pipe, and a record cleaner. They locked the door to the McDaniel house, replaced the key, went home, and showed Melody the pool cues.

Defendant and Greg Manon again left to buy cigarettes. Defendant mentioned something about returning to the McDaniel house, and they did so. Defendant took the key, unlocked the door, and they entered. Manon found a grocery sack and gave it to defendant who put candy, cheese, and baloney in it. They left the house with the grocery sack and returned home, meeting Melody on the way. Manon testified he was not prosecuted but was required to report to a probation officer several times. On cross-examination Manon acknowledged that in a prior statement he gave to police, he did not say he entered the McDaniel house twice. He explained that the police did not ask how many times he entered. They just asked "what we was doing, and all that."

Melody Bender testified that on the morning in question, defendant and Greg Manon showed her the pool cues. The two left, and she followed them. She lost sight of them but eventually found them coming out of the McDaniel house with defendant carrying a paper bag. Defendant gave her the bag, and the three returned home. Melody admitted that she had a prior forgery conviction. She testified that she was defendant's girlfriend but that she was seeing a marriage counselor with her husband.

Harold Null, a neighbor of the McDaniels, testified that he saw Greg Manon, defendant, and another go into McDaniel's garage and emerge with a paper sack.

Ruth McDaniel, Gary's mother, testified concerning the items missing from her home, and the fact that she gave no one authority to enter her home on the date in question. Sheriff's Detective Lawrence Isaacson testified that some of the missing items were recovered in the Manons' residence. He also identified a written statement defendant gave to police in which he admitted that he had been at the McDaniel residence. According to defendant's statement, he entered the garage but did not go into the house. He said Manon entered the house and when he came out, he handed defendant pool cues. The two of them left, defendant carrying

the pool cues, and Manon carrying a pipe, sunglasses, another pool cue, and a small sack of groceries.

The defense presented no evidence. Over defendant's objection, the jury was given the following instruction defining "burglary."

"A person commits the crime of burglary who, without authority, knowingly enters *or remains within* a building or any part thereof with the intent to commit theft." (Emphasis added.)

The issues instruction on burglary, to which the defense objected, also included the "remained within" alternative.

Defendant argues that it was error to include the "remains within" alternative in these instructions. Section 19—1(a) of the Criminal Code of 1961 provides:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building * * * or any part thereof, with intent to commit therein a felony or theft. * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a).)

According to defendant, burglary can be committed in two ways: (1) by entering without authority and with intent to commit a felony or theft, or (2) by entering with authority and subsequently remaining, with the requisite intent, after the authority has terminated. A person who makes an unauthorized entry without intent to commit a felony or theft and subsequently develops such intent is not, according to defendant, guilty of burglary. Since the evidence is undisputed that neither defendant nor Manon had authority to enter the McDaniel house in the first place, defendant argues, to include the "remains within" alternative in the instructions on burglary was error. We believe any such error was harmless.

In the recent case of *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930, the defendant, without authority, entered the home of Shirley George which was then occupied by the three George children and their cousin. While in the house, the defendant twice pointed a gun at the cousin's head, both before and after removing $80 to $90 worth of meat from the freezer. Defendant put the meat in a paper bag and left.

He was convicted of home invasion, armed robbery, and armed violence. The felony which was the basis of the armed violence charge was "burglary-by-remaining." This court held that there was a fatal variance between the charge and the evidence, stating:

"[T]he statutory language ['remains within'] is aimed at a situation where a defendant lawfully enters a building and then conceals himself with the intent to commit a felony * * *." (83 Ill. App. 3d 982, 985.)

Since the evidence showed an unauthorized entry, Green was not proved guilty of "burglary-by-remaining." Similarly, in the instant case, since the

evidence was undisputed that the entry was unauthorized, it was error to include the "or remains within" alternative in the instructions on burglary. However, error in giving or refusing instructions will not justify reversal when the evidence of the defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty. *People v. Jones* (1979), 81 Ill. 2d 1.

Defendant contends that the jury could have found that there was only one entry into the McDaniel house, and that it was effected, not with the intent to commit a felony or theft, but rather to see if Gary McDaniel was home. Under these circumstances, defendant would be guilty of theft, but not burglary, because the intent to commit theft would have arisen after the unauthorized entry.

The fallacy of defendant's argument is that no evidence was introduced that only one entry was made. Although the statements given to the police by both Manon and defendant fail to mention two entries, neither one states that only one entry was made. Similarly, although Null only saw one entry, there was no indication he had the McDaniel house under surveillance and would have seen the other. Thus there was no evidence to negate the possibility that the house was entered twice.

On the other hand, Greg Manon testified that he and defendant entered the McDaniel house twice, and that they found out Gary McDaniel was not there the first time. Melody testified that after defendant and Manon showed her the pool cues, they left. She followed them and found them coming out of the McDaniel house with a paper bag. Moreover, when Null saw three people leaving the house, he only saw them carrying a paper sack. Since the pool cues were recovered at the Manon residence, Null's testimony tends to show that two entries were, in fact, made. The evidence that two entries were made, and that the second was accompanied by an intent to commit theft, is so clear and convincing the jury could not reasonably have found defendant innocent of burglary.

Defendant argues that in *People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969, the supreme court held the harmless error rule inapplicable where the jury is misinstructed on a fundamental question which is at issue in the case. However, in *Jones*, which was decided after *Stromblad*, the supreme court applied the harmless error rule in an attempt murder case where the jury was misinstructed on an essential element of the offense. The jury was given a definitional murder instruction which included mental states other than intent to kill, the necessary mental state for attempt murder. Noting that the victim was shot four times in the head and peppered with buckshot in his back, the court stated that the intent to kill was "blatantly evident," distinguishing cases where "the formation of intent to kill was at issue." *People v. Jones* (1979), 81 Ill. 2d 1, 9.) In the instant case defendant's intent to commit

theft at the time of entry was as blatantly evident as the defendant's intent to kill in *Jones*.

For the reasons stated above, the convictions and sentences entered by the Circuit Court of Whiteside County are affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.