FIFTH DIVISION
September 7, 2007

No. 1-05-1592

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT DELGADO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Robert M. Smierciak, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Robert Delgado was convicted of aggravated criminal sexual abuse after a jury trial and sentenced to four years in prison. Delgado raises four issues on appeal: The first two directly challenge his conviction. Delgado argues the State failed to prove him guilty beyond a reasonable doubt and the court failed to instruct the jury on the definition of "sexual conduct." Delgado's final two arguments challenge the fines he was ordered to pay as part of his sentence.

The Illinois Supreme Court has entered a supervisory order (*People v. Delgado*, No. 103815 (March 28, 2007)) directing this court to vacate our previous opinion (*People v. Delgado*, 368 Ill. App. 3d 985 (2006)) and reconsider our judgment under a plain error analysis.

BACKGROUND

Defendant was charged with criminal sexual assault, aggravated criminal sexual abuse,

criminal sexual abuse, and unlawful restraint. The State before trial entered a *nolle prosequi* on all of the charges except criminal sexual assault and aggravated criminal sexual abuse. The jury found defendant not guilty of criminal sexual assault, but guilty of aggravated criminal sexual abuse.

At trial, the State presented two witnesses to testify against defendant: the victim, J.L., and Detective Michael Tardi. J.L. testified that in September 2002, when she was in sixth grade, she began going to her mother's car at night to use the CB radio. J.L. used the handle "Sweetie," and she often spoke to a man whose handle was "No. 1 Asshole." J.L. was 13 years old at the time, but when No. 1 Asshole asked her age, she lied and said she was 16.

J.L. testified that on the night of October 4, 2002, she spoke briefly to No. 1 Asshole, then gave him her telephone number and asked him to call her in five minutes. Around 10 p.m., he called and they arranged to meet later that night at a public park a few blocks from J.L.'s home. J.L. asked her mother if she could go out, but her mother said no. Contrary to her mother's wishes, J.L. left the house and went to the park around 11:30 p.m.

Shortly after she arrived, a man pulled up on a bicycle. J.L. identified the man in court as the defendant. The man asked if she was J.L., she asked if he was No. 1 Asshole, and they both said yes. Defendant asked J.L. whether she had a boyfriend and whether she was a virgin, and J.L. answered yes to both questions. Defendant then asked J.L. if she wanted to "do it," which she understood to mean have sex, and she said no.

Defendant provided marijuana which they both shared. He began rubbing J.L.'s back and kissing her neck, but she asked him to stop and he did. J.L. testified that she began to feel

2

uncomfortable and tried to leave, but defendant grabbed her arm and told her he was not ready to leave yet. She sat down and they resumed talking for 10 to 20 minutes. Defendant began rubbing J.L.'s back and kissing her neck again, and he asked her again if she wanted to "do it." Once again, she said no.

At that point, J.L. testified, "somehow we ended up on the ground," with defendant on top of her. J.L. testified that defendant pinned her wrists above her head with one hand, while using his other hand to unzip her jeans and pull them down. She also testified that he put his other hand over her mouth. Defendant unzipped his pants, and inserted his penis into her vagina. After 5 to 10 minutes, J.L. testified that she felt "something warm" on her stomach, which defendant wiped off. She testified that she did not see defendant ejaculate, and she did not see what he used to wipe her stomach.

On cross-examination, J.L. said she tried to scream but defendant's hand was covering her mouth. When asked how defendant could have pinned her arms above her head and pulled down her pants, with his hand over her mouth, J.L. said he removed his hand from her mouth to undress her for, "like, two seconds," then put his hand back over her mouth.

After the incident, J.L. pulled up her pants, saw that it was 2 a.m. and left. When she returned home, her mother was furious and told her that she had called the police and that they had been to the home earlier. When the police officer returned later that night, J.L. told him defendant did not touch her. Three days later, however, on October 8, 2002, J.L. told the police and her mother that she had been raped.

The police asked J.L. to use the CB radio again to contact defendant, but he was unavailable. Eventually she was successful in setting up the meeting. J.L. did not go to the meeting, but the police did and arrested defendant. The following day she identified defendant in a lineup.

J.L. went to MacNeal Hospital on October 9, 2002, for a medical examination. She testified that she waited nine hours but was not examined. She returned the following day and was examined. Results of the examination were normal and neither confirmed nor excluded the possibility that J.L. had been assaulted. J.L. had no bruises, marks or scratches on her body after the incident and her clothes were not stained or torn.

Detective Tardi also testified for the State, and he confirmed J.L.'s account of their attempts to contact defendant via the CB radio. On October 9, after J.L. had set up a meeting, police saw a man riding a bicycle in the meeting area at the appointed time. The man, identified in court as defendant, matched the description J.L. had earlier given to police. Officers approached and arrested him.

The parties stipulated to the ages of J.L. (13) and Delgado (26) at the time of the incident. The defense did not present any evidence at trial.

The jury found defendant not guilty of criminal sexual assault but guilty of aggravated criminal sexual abuse. The trial court sentenced defendant to 4 years in prison, found he was entitled to 363 days of sentencing credit, and assessed fines, costs and fees totaling $719.

ANALYSIS

I

Defendant's first contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt because there was no physical evidence of any sexual conduct and the complainant's inconsistent and improbable testimony was overshadowed by her motive to lie.

When reviewing a conviction to determine whether the prosecution has satisfied the reasonable doubt standard, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). "In conducting this inquiry, the reviewing court must not retry the defendant." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). Rather, the reviewing court must examine the record, keeping in mind that it was the trier of fact who saw and heard the witness. *Cunningham*, 212 Ill. 2d at 280. Testimony may be found insufficient under the *Jackson* standard only where it is clear from the record that no reasonable person could accept it beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280.

Defendant relies on *People v. Ford*, 195 Ill. App. 3d 673, 675 (1990), for the proposition that the testimony of a single witness is not sufficient to support a conviction if the testimony is either vague or doubtful; however, *Ford* dealt narrowly with identification of an accused, not with witness testimony generally. In *People v. Smith*, 185 Ill. 2d 532, 541 (1999), the court

5

recognized that the testimony of a single witness, if credible, is sufficient to convict. Moreover, it is well settled that a lack of physical evidence does not establish that a sexual assault did not occur. *People v. Shum*, 117 Ill. 2d 317, 356 (1987).

Where a conviction is based upon testimony that is "improbable, unconvincing and contrary to human experience," however, the conviction must be reversed. *People v. Vasquez*, 233 Ill. App. 3d 517, 527 (1992). In *Smith*, the Illinois Supreme Court reversed a murder conviction where the only witness to link the defendant to the crime was contradicted at trial by other witnesses and was repeatedly impeached by inconsistent statements made five months before trial. *Smith*, 185 Ill. 2d at 545.

In the instant case, there are several inconsistencies in the complainant's testimony, including her failure to recall how she and defendant ended up on the ground and her inability to recall what the defendant used to wipe off her stomach. There was no physical evidence corroborating the sexual assault because J.L. waited for three days before she told the police defendant sexually assaulted her. Moreover, she was not medically examined until six days after the assault. J.L. had no bruises, marks or scratches on her body, her clothes were not stained or torn and the medical examination neither confirmed nor excluded the sexual assault.

Defendant argues that the complainant had a motive to lie, as she was no longer in trouble with her mother once she said that she had been sexually assaulted. Defendant further claims that the lack of physical evidence raises a reasonable doubt as to his guilt.

Inconsistencies in the complainant's recollection of the incident – as well as her failure to call for help – are not necessarily contrary to human experience. J.L. was a 13-year-old, 4-foot-9-

inch girl, whereas defendant was 26 years old and stood 5 feet 11 inches. The assault occurred late at night in a deserted park and J.L. testified she was crying and scared. Although J.L. testified on cross-examination that she was no longer in trouble when she told her mother she had been raped, she also testified that, prior to telling her mother what had happened, she was scared: "I was scared. Because I didn't know what he was going to do. And, I didn't know what my mother was going to do, so I just kept quiet." Thus, the delay by J.L. in reporting the incident was explained by her fear that it would only aggravate her problems with her mother.

Finally, the lack of physical evidence is consistent with the fact that J.L. waited several days before going to the hospital to have an examination. We are mindful that defendant's conviction rested solely on the testimony of the complainant and her testimony was inconsistent on some points. We are also mindful that the jury found defendant not guilty of criminal sexual assault, despite the fact that J.L. testified defendant committed an act of sexual penetration. The evidence in this case is closely balanced. However, viewed as a whole the testimony of J.L. was not so improbable, unconvincing or contrary to human experience that we can say, as a matter of law, no reasonable jury could have found the defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse. We find the evidence was sufficient to convict defendant beyond a reasonable doubt, thereby precluding any double jeopardy claim on remand. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

II

In the alternative, defendant seeks a new trial. He contends the trial court, by not giving any instruction defining "sexual conduct," failed to properly instruct the jury on a key element of

7

the crime of aggravated criminal sexual abuse, thereby depriving defendant of a fair trial.

Whether the trial court failed to properly instruct the jury is a question of law subject to *de novo* review. *People v. Reddick*, 123 Ill. 2d 184, 196-200 (1988). The State responds the defendant's claim is waived and contends omission of the jury instruction was not plain error because it did not create a serious risk that jurors wrongly convicted the defendant. The Illinois Supreme Court directed this court in a supervisory order (*People v. Delgado*, No. 103815 (March 28, 2007)) to vacate our previous opinion (*People v. Delgado*, 368 Ill. App. 3d 985 (2006)) and reconsider under a plain error analysis.

The Illinois Supreme Court addressed the issue of plain error in the context of jury instruction in *People v. Herron*, 215 Ill. 2d 167 (2005). We find *Herron* instructive. The court in *Herron* recognized when a defendant does not object to a jury instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion, then generally he forfeits review of jury instruction error. *People v. Herron*, 215 Ill. 2d 167, 175 (2005) (and cases cited therein). After recognizing the above general rule of forfeiture, the Illinois Supreme Court in *Herron* discussed plain error exceptions to the general forfeiture rule as follows:

> "Supreme Court Rule 451(c), however, provides that
> 'substantial defects' in criminal jury instructions 'are not waived by
> failure to make timely objections thereto if the interests of justice
> require.' 177 Ill. 2d R. 451(c). Rule 451(c) crafts a limited
> exception to the general rule to correct 'grave errors' and errors in
> cases 'so factually close that fundamental fairness requires that the

jury be properly instructed.' [Citations.] Rule 451(c) is coextensive with the 'plain error' clause of Supreme Court Rule 615(a), and we construe these rules 'identically.' [Citation.] Rule 615(a) provides: 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.' 134 Ill. 2d R. 615(a)." *Herron*, 215 Ill. 2d at 175-76.

The court in *Herron* noted that the plain error doctrine allows review of a forfeited error affecting substantial rights under certain circumstances and concluded as follows:

"[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the

9

> defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant." *Herron*, 215 Ill. 2d at 186-87.

The *Herron* court went on to note that, "[i]n Illinois, the closely balanced evidence prong of the plain-error test guards against errors that could lead to the conviction of an innocent person [citation], while the substantial rights prong guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial [citations]." *Herron*, 215 Ill. 2d at 186.

The Illinois Supreme Court recently in *People v. Piatkowski*, 225 Ill. 2d 551 (2007), applied the principles articulated in *Herron* regarding the plain error doctrine where the error involved jury instructions. The court in *Piatkowski* noted:

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear and obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and

> that error is so serious that it affected the fairness of the defendant's
>
> trial and challenged the integrity of the judicial process, regardless
>
> of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565,
>
> citing *Herron*, 215 Ill. 2d at 186-87.

The court in *Piatkowski* also noted that the word "plain" is not used as a term of art, but is synonymous with "clear" and "obvious," and defendant is not required to satisfy the plain error test before determining whether the evidence in the case is closely balanced. *Piatkowski*, 225 Ill. 2d at 565.

Applying the plain error test as articulated in *Herron* and reiterated in *Piatkowski*, we first determine whether error occurred. Specifically, did the trial court, by not giving any instruction defining "sexual conduct," fail to properly instruct the jury on a key element of the crime of aggravated criminal sexual abuse?

In Illinois, the burden of preparing jury instructions is primarily on the parties (*People v. Underwood*, 72 Ill. 2d 124, 129 (1978)), and the failure to offer an instruction or an objection to an instruction at trial will usually waive the issue on review (*People v. Huckstead*, 91 Ill. 2d 536, 543 (1982); 155 Ill. 2d R. 366). However, in a criminal case the trial court is responsible for fully instructing the jury on the elements of the offense, the burden of proof and the presumption of innocence. *People v. Williams*, 181 Ill. 2d 297, 318 (1998). Where the instruction error was in a definition essential to the jury's assessment of the defendant's guilt or innocence, however, it is reversible error, and the defendant is entitled to a new trial. *People v. Stromblad*, 74 Ill. 2d 35, 41 (1978).

"The purpose of jury instructions is to provide the jury with correct legal principals [to] apply to the evidence, thus enabling the jury to reach a proper conclusion based on the applicable law and the evidence presented." *People v. Jackson*, 331 Ill. App. 3d 279, 290 (2002), citing *People v. Novak*, 163 Ill. 2d 93, 115-16 (1994). As recognized by the court in *Herron*: "The function of jury instructions is to convey to the jury the law that applies to the evidence presented. [Citation.] Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them [citation]." *Herron*, 215 Ill. 2d 167, 187-88 (2005).

We are mindful that where a word or phrase is self-defining or commonly understood, the trial court's failure to define the term during jury instructions is not reversible error. See, *e.g.*, *People v. Edwards*, 343 Ill. App. 3d 1168, 1180 (2003) (instruction was not necessary to define "robbery"); *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002) (no error where trial court did not define "conceal"); *People v. Bradley*, 192 Ill. App. 3d 387, 393-94 (1989) (term "stolen motor vehicle" was readily understood and not in need of further definition via instruction). But "[w]henever Illinois Pattern Jury Instructions, Criminal (4th ed. 2000) (IPI Criminal 4th), contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal 4th instruction *shall* be used, unless the court determines that it does not accurately state the law." (Emphasis added.) 210 Ill. 2d R. 451(a).

12

1-05-1592

In the instant case, defendant was tried on one count of criminal sexual assault and one count of aggravated criminal sexual abuse. Under Illinois law, a person can commit criminal sexual assault and aggravated criminal sexual abuse in a variety of ways. The two propositions of law which guide the instant case are as follows: First, an accused is guilty of criminal sexual assault when he "commits an act of sexual *penetration* by the use of force or threat of force." (Emphasis added.) 720 ILCS 5/12-13(a)(1) (West 2004). Second, an accused is guilty of aggravated criminal sexual abuse when he "commits an act of sexual conduct with a victim who was at least 13 years of age but under 17 years of age when the act was committed and the accused used force or threat of force to commit the act." 720 ILCS 5/12-16(c)(1)(ii) (West 2004).

The Illinois Criminal Code of 1961 further defines "sexual conduct" as:

> "[A]ny intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12-12(e) (West 2004).

Although the jury was instructed on the definitions of criminal sexual assault and aggravated criminal sexual abuse, it was not instructed on the legal definition of "sexual

13

conduct." As previously noted, the jury in the instant case found defendant not guilty of criminal sexual assault, which was correctly defined by the jury instructions as an act of sexual penetration by use of force or threat of force. However, the jury found defendant guilty of aggravated criminal sexual abuse, but had no instruction defining sexual conduct as charged in the indictment as defendant's transmission of semen onto J.L.'s body.

The defendant was charged with aggravated criminal sexual abuse as follows:

"Robert Delgado committed the offense of aggravated criminal sexual abuse in that he, being at least 5 years older than [J.L.], committed an act of sexual conduct upon [J.L.], to wit: Robert Delgado's transmission of semen onto [J.L.'s] stomach, for the purpose of sexual gratification or arousal of Robert Delgado, and [J.L.] was a person at least thirteen years of age but under seventeen years of age when the act was committed in violation of Chapter 720, Act 5, Section 12-16(d) of the Illinois [C]ompiled Statutes 1992."

As reflected by the language of the indictment, defendant was charged with aggravated criminal sexual abuse in that he committed an act of sexual conduct by the transmission of semen onto J.L.'s stomach. While that conduct, transmission of semen, is included in the Criminal Code's definition of "sexual conduct" under section 12-12(e) (720 ILCS 5/12-12(e) (West 2004)), it is not included in the Illinois Pattern Jury Instruction that defines "sexual conduct" or in any of the jury instructions given to the jury in the instant case. IPI Criminal 4th No. 11.65D states:

14

1-05-1592

"The term 'sexual conduct' means any intentional or

knowing touching or fondling by [ (the victim) (the accused) ],

either directly or through the clothing, of [ (the sex organ) (anus)

(breast) ] of [ (the victim) (the accused) ] [any part of the body of a

child under 13 years of age], for the purpose of sexual gratification

or arousal of the victim or the accused."

As reflected by the above Illinois Pattern Jury Instruction, nowhere is transmission of semen included in the instruction's definition of sexual conduct. The pattern instruction fails to correctly state the law as applied to the facts of the instant case in which the State charged defendant with committing an act of sexual conduct upon J.L. by the transmission of semen onto J.L.'s stomach. The jury in the instant case received no instruction defining sexual conduct despite the fact that such conduct is defined, albeit incompletely, in the Illinois Pattern Jury Instruction, IPI Criminal 4th No. 11.65D. Moreover, despite the fact that transmission of semen is included in the Criminal Code's definition of sexual conduct and in the indictment in the instant case, the jury received no instruction defining sexual conduct as transmission of semen by defendant onto the body of J.L.

We reject the State's argument that the term "sexual conduct" is self-defining. Rather, the error in the instruction went to a fundamental issue that prevented the jury from properly determining if the defendant was guilty of the crime charged. The jury in the instant case did not receive a definition of a critical element of the offense. See *Stromblad*, 74 Ill. 2d at 41 (finding reversible error for failure to properly define "obscenity" in jury instructions). As such, the jury

15

instructions were misleading or confusing causing ordinary persons acting as jurors in the instant case to fail to understand them. See *Herron*, 215 Ill. 2d at 167, 187-88. ("The function of jury instructions is to convey to the jury the law that applies to the evidence presented. [Citation.] Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them [citation]").

The Illinois Supreme Court has recognized that "sexual conduct" is a specific type of conduct different from "sexual penetration," which requires contact between one person's sex organ and another person's sex organ, mouth, or anus. *People v. Novak*, 163 Ill. 2d 93, 115 (1994). "Sexual conduct" as defined by the Criminal Code (720 ILCS 5/12-12(e) (West 2004)) requires the touching or fondling of specific parts of the body or the transfer of semen onto another person's body. We note the authors of the pattern jury instructions chose to include the definition of "sexual conduct" in the instructions. However, the definition provided in the pattern jury instructions was incomplete and omitted the statutory language contained in the Criminal Code including "the transfer of semen onto another person's body" as "sexual conduct." 720 ILCS 5/12-12(e) (West 2004). Although the definition is incomplete as it appears in the pattern jury instruction, the choice to include the definition of "sexual conduct" in the instructions further undermines the State's argument that the term is self-defining and demonstrates recognition by those who authored the instruction of the need to define "sexual conduct."

In the instant case, the jury was given no definition of sexual conduct. Without the complete and accurate definition of "sexual conduct" the instructions given were ambiguous and

misleading. For the reasons previously discussed, the failure to properly define "sexual conduct" was clear and obvious error.

Determining that the failure to give the jury any instruction defining "sexual conduct" was a clear and obvious error, we must next determine whether defendant met his burden to show the error was prejudicial. *Herron*, 215 Ill. 2d at 193. Specifically, did defendant show the evidence presented by the State against defendant rendered the evidence "closely balanced"? Whether the evidence is closely balanced is a question separate and distinct from whether the evidence is sufficient to sustain a conviction on review against a reasonable doubt challenge. For the reasons previously discussed, we find the evidence sufficient to convict for reasonable doubt purposes. However, at this point in our analysis the issue under the plain error review is whether the evidence is closely balanced

As to whether the evidence is closely balanced, we begin by noting there were several inconsistencies in J.L.'s testimony. She failed to recall how she and defendant ended up on the ground and she was unable to recall what defendant used to wipe off her stomach. Moreover, J.L. originally told police defendant did not touch her, but changed her story three days later and complained of sexual assault. She was not medically examined until six days after the assault. There was no physical evidence corroborating her version of what happened and no physical evidence of any sexual conduct. Further, as pointed out by defendant J.L. arguably had a motive to lie, as she was no longer in trouble with her mother once she said that she had been sexually assaulted. J.L. had left the house without her mother knowing and without her mother's permission. Her mother was angry with her and called the police. She admitted at trial that she

17

was in trouble with her mother and admitted that the trouble ended when after three days she told her mother she had been raped.

The jury found the defendant not guilty of criminal sexual assault, but guilty of aggravated criminal sexual abuse. The instruction error occurred in the context of a definition essential to the jury's assessment of guilt or innocence of the charge of aggravated criminal sexual abuse. Moreover, the error was serious and denied defendant a substantial right, and thus a fair trial. See *People v. Stromblad*, 74 Ill. 2d 35, 41 (1978) (where instruction error is in a definition essential to the jury's assessment of defendant's guilt or innocence, it is reversible error, and requires a new trial); *People v. Hurtado-Rodriguez*, 326 Ill. App. 3d 76, 86 (2001) (finding plain error where jury instructed with outdated pattern instruction that incompletely defined the offense of harassment of a witness); *People v. Ogunsola*, 87 Ill. 2d 216, 222-23 (1981) (finding plain error where jury instructions incompletely defined offense of deceptive practice). We believe the defendant has met his burden to show that the evidence was so closely balanced that the error threatened to tip the scales of justice against defendant. See *Piatkowski,* 225 Ill. 2d at 565.

The State contends the error was harmless beyond a reasonable doubt. In the instant case, the jury, without a definition of "sexual conduct," was not properly informed as to what under the law constituted sexual conduct. The jury could have interpreted "sexual conduct" to include any conduct that was sexual in nature. However, defendant was not charged with any conduct that was sexual in nature; rather, he was charged with sexual conduct by transfer of semen onto the body of J.L. Specifically the language of the indictment provided as follows:

1-05-1592

"Robert Delgado committed the offense of aggravated criminal sexual abuse in that he, being at least 5 years older than [J.L.], committed an act of sexual conduct upon [J.L.], to wit: Robert Delgado's transmission of semen onto [J.L.'s] stomach, for the purpose of sexual gratification or arousal of Robert Delgado, and [J.L.] was a person at least thirteen years of age but under seventeen years of age when the act was committed in violation of Chapter 720, Act 5, Section 12-16(d) of the Illinois [C]ompiled Statutes 1992."

As previously noted, the crime of aggravated criminal sexual abuse occurs when a person commits an act of sexual conduct, which, under the Criminal Code, requires the touching or fondling of specific parts of the body or the transfer of semen onto another person's body. 720 ILCS 5/12-12(e) (West 2004). In the instant case, the sexual conduct defendant was charged with required the State to prove transmission of semen by defendant onto J.L.'s body. However, the record reflects there was no physical evidence of such transmission and no physical evidence corroborating the sexual assault, which J.L. did not report for three days. The only evidence of the transmission of semen was J.L.'s testimony, which, as previously noted, was at times inconsistent and was rejected by the jury in the context of the sexual penetration charge. J.L. testified she felt "something warm" on her stomach, but she also testified she did not see defendant ejaculate and did not see what he used to wipe her stomach.

19

The jury after considering all the evidence including the testimony of J.L. found the defendant not guilty of criminal sexual assault but guilty of aggravated criminal sexual abuse. That verdict reflects that the jury found the State failed to prove defendant guilty beyond a reasonable doubt of criminal sexual assault despite the testimony of J.L. that defendant committed an act of sexual penetration. The jury was instructed that in order to sustain the charge of criminal sexual assault, the State had to prove defendant committed an act of sexual penetration. Following that instruction the jury found the State failed to prove sexual penetration. It is presumed on appeal that the jury followed the trial court's instructions. *People v. Jackson*, 145 Ill. App. 3d 626, 646 (1986).

However, the jury was never instructed the State had to prove transmission of semen by defendant onto the body of J.L. in order to sustain the charge of aggravated criminal sexual abuse. We reject the State's argument that the instruction error was harmless beyond a reasonable doubt. Considering the closely balanced evidence, we cannot conclude the result of the trial would not have been different had the jury been properly instructed. *People v. Johnson*, 146 Ill. 2d 109, 136 (1991) (an error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed).

The record in the instant case, with the instructions that failed to accurately define sexual conduct, reflects the jury could have concluded any conduct sexual in nature was in fact sexual abuse. Considering the closely balanced evidence, without the accurate instruction defining sexual conduct, we cannot conclude the jury did not find defendant guilty of aggravated criminal sexual abuse simply because conduct of some type of a sexual nature occurred between J.L. and

defendant. However, defendant was not charged with conduct of some type of a sexual nature; rather, he was charged with sexual conduct by transmission of semen onto J.L.'s stomach. The State was not required to prove conduct of some type of sexual nature occurred between defendant and J.L. Rather, to sustain the charge of aggravated criminal sexual abuse, as charged in the instant case, the State was required to prove beyond a reasonable doubt the transmission of semen by defendant onto J.L.'s body. The jury was not so instructed. The jury was never instructed that in order to find the defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse, the State was required to prove transmission of semen by defendant onto J.L.'s body.

We are mindful that "[j]ury instructions will not amount to harmless error if they incorrectly advise the jury as to an essential element of the crime." *People v. Smith*, 295 Ill. App. 3d 405, 411 (1998), citing *Stromblad,* 74 Ill. 2d at 41. "Sexual conduct" is an essential element of the crime of aggravated criminal sexual abuse. The jury was not correctly instructed as to the meaning of sexual conduct as charged against defendant in the instant case. Giving due consideration to the facts and the applicable law, we find that fundamental fairness requires that the jury be properly instructed. For the reasons previously discussed, we reject the State's harmless error argument. Upon retrial, based on the factual context together with the charging documents and consistent with the Criminal Code definition of sexual conduct, the jury should receive an instruction tailored to the factual context of the instant case defining sexual conduct using the language from IPI Criminal 4th No. 11.65D with the added language including transmission of semen as follows:

21

"The term 'sexual conduct' means any intentional or
knowing touching or fondling by [ (the victim) (the accused) ],
either directly or through the clothing, of [ (the sex organ) (anus)
(breast) ] of [ (the victim) (the accused) ] [any part of the body of a
child under 13 years of age], or any transfer or transmission of
semen by the accused upon any part of the clothed or unclothed
body of the victim, for the purpose of sexual gratification or arousal
of the victim or the accused."

An instruction based on the factual context of the instant case using the applicable language from the above instruction will more completely and accurately reflect "sexual conduct" as defined under Illinois law by section 12-12(e) (720 ILCS 5/12-12(e) (West 2004)) and as charged in the instant case.

For the reasons previously discussed, the defendant satisfied his burden of proving the plain error exception to the general forfeiture rule. The failure to instruct the jury with an accurate and complete definition of sexual conduct was a clear and obvious error and the evidence was so closely balanced that the error threatened to tip the scales of justice against defendant. Moreover, regardless of the closeness of the evidence, the error undermined the fairness of defendant's trial and challenged the integrity of the judicial process. Accordingly, we reverse the judgment of the circuit court and remand for proceedings consistent with this opinion.

III

Defendant's third contention on appeal is that he is entitled to a $5-per-day credit against

his fines for the time he spent in custody awaiting trial. Although the legislature amended the statute that provides for the $5-per-day credit prior to defendant's sentencing, defendant argues that he can elect to be sentenced under either the law in effect on the date of the offense or the law in effect on the date of sentencing.

Under Illinois law, "[a]ny person incarcerated on a bailable offense *** and against whom a fine is levied on conviction of such offense shall be allowed a credit of $ 5 for each day so incarcerated ***. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2004). Subsection (b), which became effective July 9, 2004, provides that the $5-per-day credit is not available to a defendant who is incarcerated for sexual assault, as that term is defined in section 5-9-1.7 of the Unified Code of Corrections (730 ILCS 5/5-9-1.7 (West 2004)). Section 5-9-1.7 defines "sexual assault" broadly to include, *inter alia*, aggravated criminal sexual abuse. 730 ILCS 5/5-9-1.7 (West 2004).

We recognize that "where a defendant has been charged with an offense which was amended subsequent to the commission of the offense, but prior to sentencing, he may elect to be sentenced under the law in effect at the time of the offense or the law in effect at the time of the sentencing." *People v. Sias*, 91 Ill. App. 3d 1095, 1101 (1980).

In the instant case, the law in effect on the date of the offense provided that defendant was entitled to a $5-per-day credit against any fines assessed upon conviction for the offense. Defendant ultimately spent 363 days incarcerated while awaiting trial. Under the law in effect on the date of the offense, the defendant is entitled to credit up to $1,815 toward any fine assessed, provided that the credit does not exceed the fine. Defendant was fined a total of $719;

23

accordingly, he is entitled to credit for the entire sum.

IV

Finally, defendant claims the trial court erred when it imposed a $20 penalty for the Violent Crime Victims Assistance Fund and asks this court to vacate the penalty. The State agrees that the fine was improperly imposed. Accordingly, the $20 penalty is vacated.

CONCLUSION

For the reasons previously discussed, we order defendant's mittimus be amended to reflect a $5-per-day credit against his fines. We further order defendant's mittimus to be amended to vacate the $20 fine to the Violent Crime Victims Assistance Fund. We reverse defendant's conviction for aggravated criminal sexual abuse. We remand for retrial consistent with this opinion. There is no double jeopardy problem because the record reflects sufficient evidence proving defendant guilty beyond a reasonable doubt. *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

Reversed and remanded.

TULLY and O'BRIEN, JJ., concur.